NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

FRANCISCO R., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.M., *Appellees.*

No. JV 14-0161
FILED 11-25-2014

---

Appeal from the Superior Court in Maricopa County
No. JD507796
The Honorable James P. Beene, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Daniel J. Huff
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

---

**G E M M I L L**, Judge:

¶1         Francisco R. (Father) appeals the juvenile court's order terminating his parental rights to his son, M.M., arguing the evidence failed to support termination under the statutory ground of abandonment.  For the reasons that follow, we affirm the severance of Father's parental rights to M.M.

¶2         M.M. was born in early 2008.  Father arrived at the hospital a couple hours after delivery, by which time D. M. ("Mother") had filled out the paperwork, giving M.M. her last name.   Father did not sign anything at the hospital acknowledging that he was the father and his name was not included on the birth certificate.

¶3         Father claims that he repeatedly informed Mother that he wanted his name to appear on the birth certificate, but he did not take any legal action when she would not agree to it.  Paternity was established in October 2013, as part of the severance proceedings.

¶4         At the time of M.M.'s birth, Father lived with Mother and her two other children at a house owned by M.M.'s maternal grandmother ("Grandmother").  In May of 2008, Father was arrested for violating his probation resulting from a conviction for possession of marijuana.  Father was subsequently sent to state prison until he was deported to Mexico in February 2010.

¶5         In early 2009, while Father was in prison, Grandmother wrote a letter to Father, informing him that M.M. had been taken by Child Protection Services ("CPS"), now the Department of Child Safety ("DCS").[1] Father called Grandmother and was reassured that Mother was doing everything she could to get him back.  Father contends he additionally attempted to call DCS, but lacked the contact information to discover where M.M. was in order to obtain an address or phone number.  Therefore, because he lacked the contact information, Father admitted that he did not

_____

[1] CPS was formerly a division of the Arizona Department of Economic Security (ADES).  Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for creation of CPS and for ADES's administration of child welfare and placement services under title 8, and transferred such powers, duties, and purposes to the newly established DCS.  *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54.

send anything to or have any contact with M.M. from April 2008 until March 2010.

¶6        Approximately a month after Father's deportation in February 2010, at which time Mother had regained custody of M.M., she took M.M. to visit Father in Mexico for several weeks, and Father spent time playing with and taking care of M.M.  This was the last in-person contact Father had with M.M.  In April 2010, Father was arrested when he tried to enter the United States illegally and was sentenced to 57 months in federal custody.

¶7        Father made contradictory statements at the severance hearing regarding his contact with M.M. following his arrest in April 2010. On direct examination Father claimed to have called M.M. at least three times between April 2010 and November 2011 (once from each of three places he was incarcerated).  On cross-examination, however, Father said that he did not speak with his son on the phone until October or November of 2011.

¶8        In November of 2011, DCS again took custody of M.M. and Father stopped contacting Mother after being told that she had provided DCS with his contact information.  In October 2012, DCS filed a severance motion alleging that Father failed to maintain a normal parental relationship with M.M. by not providing reasonable support or normal supervision and by not maintaining regular contact.  Father did not call DCS in order to get in touch with M.M. until 2013, after the severance motion had been filed.  Since January 2013, Father has written letters to, been in phone contact with, and provided some amounts of money for M.M.

¶9        The juvenile court conducted a contested severance trial in April 2014.  The court issued its ruling in June 2014 terminating Father's parental rights regarding M.M. on the ground of abandonment.  Father timely appeals and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 8-235, 12-120.21(A)(1), and -2101(A)(1).

¶10       Father argues the juvenile court's finding that Father has abandoned M.M. is erroneous and unsupported by the facts.  We will uphold the juvenile court's termination of parental rights "absent an abuse of discretion or unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004) (internal

quotation omitted). We emphasize that we do not re-weigh the evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002) ("The resolution of such conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not re-weigh the evidence on review."). If there is any reasonable evidence to support the trial court's order, we affirm. *Id.*

¶11        The parent-child relationship may be terminated based on clear and convincing evidence that the parent abandoned the child, in accordance with A.R.S. § 8-533(B)(1). "Abandonment" is defined as

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1).

¶12        The Arizona Supreme Court has held that "abandonment is measured not by a parent's subjective intent, but by the parent's conduct: the statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18, 995 P.2d 682, 685–86 (2000).

¶13        The record reveals a period of time between Father's arrest in May 2008 and DCS taking custody of M.M. in early 2009 for which Father offers no reason for not providing any support or making any contact with M.M., notwithstanding his incarceration status. Our supreme court in *Michael J.* emphasized that "incarceration alone . . . does not justify a failure to make more than minimal efforts to support and communicate with [a] child." 196 Ariz. at 250, ¶¶ 21-22, 995 P.2d at 686. Father acknowledges he did not have contact with M.M from his arrest in May 2008 until March 2010, though he blames his lack of communication on not knowing the contact information for DCS. It was for the juvenile court to evaluate and determine the weight to give to Father's argument that he did not have contact information for DCS. Because this court does not re-weigh evidence

and the juvenile court's determination is reasonably supported by the evidence, we conclude the juvenile court did not abuse its discretion by finding that Father failed to maintain a normal relationship during the period from May 2008 to March 2010.

¶14        Father's contradictory statements (that he did not speak to M.M. on the phone following his April 2010 arrest until October or November of 2011 and that he spoke with him at least three times in that period) are also reviewed subject to the evidentiary test described above. Because the juvenile court's determination is reasonably supported by the evidence, we further conclude the court did not abuse its discretion by finding that Father failed to maintain a normal relationship during the period from April 2010 to October 2011.

¶15        We recognize that Father began, in the months prior to the severance hearing, sending letters to and support for M.M., but the juvenile court is not required to place great weight on last minute compliance efforts. *See Matter of Appeal in Maricopa Cnty. Juvenile Action No. JS-501568*, 177 Ariz. 571, 577, 869 P.2d 1224, 1230 (1994) (finding mother's successful addiction recovery "too little, too late").

¶16        To summarize, the two time periods listed by the court both exceed the prima facie six month abandonment standard of A.R.S. § 8-533(B)(1).  Sufficient evidence in the record supports the juvenile court's findings that Father did not provide reasonable support or normal supervision and did not maintain regular contact during these periods, even considering his incarceration.  On this record, we conclude the juvenile court did not abuse its discretion in terminating Father's parental rights based on abandonment.[2]

¶17        Accordingly, we affirm the juvenile court's termination of Father's parental rights.

Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

---

[2] Father does not challenge the best interests finding on appeal.