53 P.3d 203

JESUS M. and Yolanda M., Appellants,

v.

ARIZONA DEPARTMENT OF ECO-NOMIC SECURITY, Blanca M., and Selena M., Appellees.

Nos. 2 CA–JV 2001–0095, 2 CA–JV 2001–0097.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 5, 2002.

Suzanne Laursen, Tucson, for Appellant Jesus M.

Phillip H. Larriva, Tucson, for Appellant Yolanda M.

Janet Napolitano, Arizona Attorney General, by Michelle R. Nimmo, Tucson, for Appellee Arizona Department of Economic Security.

## OPINION

PELANDER, J.

¶ 1 In these consolidated appeals, the father of Selena M. and the mother of Selena and Blanca M. appeal from the juvenile court's order of November 21, 2001, denying the mother's motion to establish a permanent guardianship for the girls and granting the state's motion to terminate both parents' rights to the children. The juvenile court terminated the father's rights based on the length of a prison sentence he is currently serving for a burglary conviction, A.R.S. § 8–533(B)(4). The court found severance of the mother's rights justified on grounds of mental illness and chronic substance abuse, § 8–533(B)(3), and length of time in care, § 8–533(B)(7)(a) and (b).

¶ 2 To justify severance pursuant to § 8–533(B)(4), the Arizona Department of Economic Security (ADES) is required to prove

that a parent has been ordered to serve a prison sentence "of such length that the child will be deprived of a normal home for a period of years." To justify severance pursuant to § 8–533(B)(3), ADES must prove that a parent is unable to discharge parental responsibilities because of mental illness, mental deficiency, or chronic substance abuse and that the condition is reasonably likely to continue for a prolonged, indeterminate period. To justify severance pursuant to § 8–533(B)(7)(b), ADES must prove the child has been in a court-ordered, out-of-home placement for fifteen months or longer; the parent has been unable to remedy the circumstances which led to the out-of-home placement; and there is a substantial likelihood that the parent will be incapable of providing "proper and effective parental care and control in the near future." Under the latter ground, the court is required to consider the availability of reunification services and the parent's participation in those services. § 8–533(C).

■ ¶ 3 Under any of the grounds enumerated in § 8–533(B), the court must also consider the best interests of the child. § 8–533(B); *Michael J. v. Arizona Dep't of Econ. Sec.*, 196 Ariz. 246, ¶ 12, 995 P.2d 682, ¶ 12 (2000); *In re Maricopa County Juvenile Action No. JS–8490*, 179 Ariz. 102, 107, 876 P.2d 1137, 1142 (1994). If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds. *Michael J.*, 196 Ariz. 246, ¶ 27, 995 P.2d 682, ¶ 27; *In re Maricopa County Juvenile Action No. JS–6520*, 157 Ariz. 238, 756 P.2d 335 (App.1988).

■ ¶ 4 The standard of proof required to terminate parental rights under § 8–533(B) is clear and convincing evidence. A.R.S. § 8–537(B); *see also* Ariz.R.P.Juv.Ct. 66(C), 17B A.R.S.; *Michael J.*, 196 Ariz. 246, ¶ 12, 995 P.2d 682, ¶ 12. The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the

evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings. *In re Pima County Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App.1987). On review, therefore, we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous. *Michael J.*, 196 Ariz. 246, ¶ 20, 995 P.2d 682, ¶ 20; *Jennifer B. v. Arizona Dep't of Econ. Sec.*, 189 Ariz. 553, 555, 944 P.2d 68, 70 (App.1997).

¶ 5 The juvenile court in this case prepared a remarkably thorough, thirteen-page minute entry containing detailed findings of fact and conclusions of law. We have reviewed the record in its entirety and find it contains reasonable evidence to support the juvenile court's factual findings, which include the following: Blanca and Selena are the sixth and seventh of their mother's eight children, none of whom remains in her custody. Blanca, Selena, and four of their brothers were removed from Yolanda's custody in March 1999, several days after she had been evicted from her residence. Yolanda admitted the allegations of a first amended dependency petition, including the allegation that her serious drug addiction rendered her unable to care for her children, six of whom were adjudicated dependent as to her on April 9, 1999. Selena and Blanca were adjudicated dependent as to their respective fathers on the same date, both fathers having likewise admitted the allegations of the petition.

¶ 6 Selena's parents had been married for several months when she was born on June 4, 1997. Like Yolanda, Jesus was also a drug addict. In November 1997 he was sent to prison where he remains, serving a 6.5–year sentence for burglary. He testified that his earliest possible release date is in March 2003 and the latest is in January 2004. The court found his earliest possible release date to be October 2003.[1] The court also found that, because Jesus is a Mexican national, he

---

1. According to Division One of this court in *James S. v. Arizona Department of Economic Security*, 193 Ariz. 351, ¶ 12 n. 3, 972 P.2d 684, ¶ 12 n. 3 (App.1998), instead of considering the parent's anticipated release date, the court should instead consider the actual length of the sentence, independent of whether earlier release might be possible. *See In re Maricopa County Juvenile Action No. JS–5609*, 149 Ariz. 573, 575, 720 P.2d 548, 550 (App.1986).

faces deportation to Mexico upon his release from prison.

¶7 In the first of two issues he raises, Jesus argues that his sentence is not of such length as to deprive Selena of a normal home for a period of years. He contends the language of § 8–533(B)(4), "that the child will be deprived of a normal home for a period of years," is "forward looking," concerned only with the time remaining on the parent's sentence—from precisely what point, Jesus does not suggest—rather than with the overall length of the parent's incarceration. He claims that, from the time of the juvenile court's under-advisement ruling in November 2001, the remainder of his sentence was somewhere between sixteen and twenty-six months, a period he contends would not deprive Selena of a normal home for "a period of years."

¶8 We reject the father's suggestion that we ignore the four years he had already spent incarcerated between November 1997 and November 2001 and instead focus only on the amount of time remaining on his sentence. What matters to a dependent child is the total length of time the parent is absent from the family, not the more random time that may elapse between the conclusion of legal proceedings for severance and the parent's release from prison. We conclude the legislature used the words "will be deprived" in § 8–533(B)(4) to mean "will have been deprived" in total, intending to encompass the entire period of the parent's incarceration and absence from the home. *See James S. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 351, ¶¶15–17, 972 P.2d 684, ¶¶15–17 (App.1998) (father's 5.5–year sentence, begun when child was six months old and with more than three years remaining, was of sufficient length to satisfy § 8–533(B)(4) under circumstances of that case); *In re Maricopa County Juvenile Action No. JS–9104*, 183 Ariz. 455, 459–60, 904 P.2d 1279, 1283–84 (App. 1995) (5.25–year sentence, of which 1.5 years remained, justified severance under specific facts of case). Jesus has cited no authority in support of his proposed alternative construction, which we find to be at odds with the purpose behind the statute.

¶9 By itself, the length of a parent's sentence is not dispositive in any event. Instead, the juvenile court must consider the many facts and circumstances specific to each case. *James S.*, 193 Ariz. 351, ¶14, 972 P.2d 684, ¶14. As our supreme court held in *Michael J.*:

[T]he better approach is to consider each case on its particular facts.... The trial court, in making its decision, should consider all relevant factors, including, but not limited to: (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue. After considering those and other relevant factors, the trial court can determine whether the sentence is of such a length as to deprive a child of a normal home for a period of years.

196 Ariz. 246, ¶29, 995 P.2d 682, ¶29.

¶10 In its ruling, the juvenile court cited *Michael J.*, quoted those factors, and applied them as follows:

In applying these standards, the Court concludes that the State has met its burden of proof as to the father under the second prong of A.R.S. § 8–533(B)(4). The evidence presented showed that the father had never parented this child and had no relationship with her prior to his incarceration. Furthermore, the father did not even know the minor's birth date and made no attempts through gifts, cards, letters or support to establish a relationship with her throughout the over two and one-half years of the dependency case, despite being represented by counsel and appearing at most of the court hearings.

... The father will remain incarcerated until at least October 2003 and then will likely be deported as he is an illegal alien. There will be no deprivation to Selena at

the termination of the father's presence in her life; in fact, all evidence points to the contrary. While the father expressed support for placement of the minors with their mother, he never indicated any desire to parent Selena.

¶ 11 Although Jesus argues that his and Yolanda's testimony at the severance hearing supplied evidence directly contrary to the juvenile court's findings as to the nature and extent of his relationship with Selena before he was incarcerated as well as his efforts to maintain and develop the relationship from prison, the testimony of at least two Child Protective Services case managers did support the court's findings.

¶ 12 The resolution of such conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not re-weigh the evidence on review. *See In re Pima County Severance Action No. S–1607,* 147 Ariz. 237, 239, 709 P.2d 871, 873 (1985) (where certain facts "sharply disputed," appellate court "defer[s] to the judgment of the trial court which had the opportunity to assess the credibility, attitude and condition of the parties at trial"); *In re Maricopa County Juvenile Action No. JS–8441,* 175 Ariz. 463, 465, 857 P.2d 1317, 1319 (App.1993) ("[T]his court will accept the findings of the juvenile court unless they are clearly erroneous; we will not reweigh the evidence."); *In re Pima County Juvenile Action No. S–139,* 27 Ariz.App. 424, 427, 555 P.2d 892, 895 (1976) ("We defer to the trial court's assessment of credibility of witnesses. . . ."). Instead, because reasonable evidence exists to support the juvenile court's findings here, we accept them. We find no abuse of the juvenile court's discretion in finding grounds for severance of Jesus's rights under § 8–533(B)(4) had been clearly established.

¶ 13 In the father's second issue and the mother's only issue on appeal, both challenge the juvenile court's findings that termination of their parental rights was in the best interests of Blanca and Selena. Whether severance is in the child's best interests is a question of fact for the juvenile court to determine. *See In re Maricopa County Juvenile Action No. JS–501904,* 180 Ariz. 348, 352, 884 P.2d 234, 238 (App.1994). We view the evidence, and draw all reasonable inferences from it, "in favor of supporting the findings of the trial court." *In re Maricopa County Juvenile Action No. J–75482,* 111 Ariz. 588, 591, 536 P.2d 197, 200 (1975).

¶ 14 "[T]hat the best interests of the child will be served by removal from a custodial relationship may be established by either showing an affirmative benefit to the child by removal or a detriment to the child by continuing in the relationship." *Jennifer B.,* 189 Ariz. at 557, 944 P.2d at 72. *See also In re Maricopa County Juvenile Action No. JS–500274,* 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990). "One factor the court may properly consider in favor of severance is the immediate availability of an adoptive placement. Another is whether an existing placement is meeting the needs of the child." *Audra T. v. Arizona Dep't of Econ. Sec.,* 194 Ariz. 376, ¶ 5, 982 P.2d 1290, ¶ 5 (App.1998) (citations omitted).

¶ 15 The juvenile court here found that both girls are now placed "in an excellent foster home where the foster parents are committed to adopting them." Noting the "roller coaster of instability" that had characterized so much of their young lives and the girls' urgent need for "a safe, stable environment," the court was obviously persuaded by the testimony of two therapists who strongly advocated leaving Blanca and Selena in their current placement so that "they can address abandonment issues and develop a healthy attachment to a family." The testimony of Chuck Chiverton, in particular, that moving these two "extremely [emotionally] fragile children" from their current home "would be devastating" to them afforded more than reasonable evidence to support the court's best-interest findings.

¶ 16 In light of the juvenile court's thorough findings of fact and sustainable conclusions of law with respect to both the statutory grounds for severance and the children's best interests, we believe little would be gained by our further "rehashing the trial

court's correct ruling" in our decision. *Cf. State v. Whipple*, 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App.1993). Having found that reasonable evidence in the record supports the juvenile court's findings and that the court has correctly applied the law to those findings, we affirm its order terminating both parents' rights to Blanca and Selena.

CONCURRING: WILLIAM E. DRUKE, Presiding Judge, and JOSEPH W. HOWARD, Judge.