NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VERONICA R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] G.R., A.R.,
*Appellees*.

No. 1 CA-JV 14-0140

FILED 12-23-2014

Appeal from the Superior Court in Maricopa County
No. JD20562
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security ("ADES") in this matter. *See* ARCAP 27.   To maintain consistency with the juvenile court record, however, we refer to ADES (and Child Protective Services ("CPS")) throughout the body of our decision.

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kenton D. Jones joined.

---

**B R O W N**, Judge:

¶1 Veronica R. ("Mother") appeals the juvenile court's order terminating her parental rights to her two daughters, G.R., born in 2001, and A.R., born in 2007 (collectively, "the children"). For the reasons that follow, we affirm.

## BACKGROUND

¶2 In August 2010, CPS received a report that Mother engaged in acts of prostitution in her home, where the children also resided. In July 2011, CPS received a report that Victor R. ("Father") had molested G.R. On July 28, 2011, G.R. disclosed to her physician that Father fondled her breasts and showered with both children. At the time of this report, Mother was incarcerated arising from her November 2010 conviction for facilitating an illegal prostitution enterprise.

¶3 In August 2011, CPS took custody of the children and ADES filed a dependency petition alleging Mother[2] was unable to parent the children due to neglect. Mother denied the dependency allegations, but submitted the matter to the court on the record. After considering the evidence, the juvenile court found the children dependent as to Mother and implemented a case plan of family reunification. In furtherance of the case plan, ADES offered Mother individual counseling, psychological consultation, and a psychological evaluation.

¶4 In July 2013, at ADES' request the case plan changed to severance and adoption. ADES then filed a motion to terminate Mother's parental rights, alleging the children had been cared for in an out-of-home

---

[2] Although the juvenile court also terminated Father's parental rights, he is not a party to this appeal.

placement for more than fifteen months. In subsequent amended motions to terminate, ADES also alleged Mother (1) neglected the children and (2) willfully abused or failed to protect them from willful abuse. A contested termination hearing was conducted over the course of four days in March 2014. The following evidence was presented.

¶5 Graviola Ruth Brooks, M.D., a pediatrician, became the children's doctor in 2007. In July 2011, the maternal grandmother brought the children to Dr. Brook's office for a pediatric appointment. During the visit, G.R. informed Dr. Brooks that Father repeatedly touched her breasts, notwithstanding her requests that he stop. She also disclosed that Father stroked her and kissed her neck, which made her uncomfortable. Following this report, Dr. Brooks contacted the police and CPS.

¶6 Alicia Tovar, a licensed therapist, provided counseling to G.R. after she was taken into CPS custody. During their counseling sessions, G.R. disclosed that she was sexually abused by both Father and a family friend and, when she reported the abuse to Mother, Mother did not believe her. G.R. explained that Mother would leave the children alone in the car "for hours" with no food or water when she engaged in acts of prostitution. G.R. also reported that Mother frequently brought unfamiliar men to their home to engage in acts of prostitution. Mother told G.R. that "she was getting too old for prostitution" and it would soon be G.R.'s "turn" to become a prostitute. In August 2012, Tovar organized a telephonic meeting between G.R. and Mother and Father. During the meeting, G.R. confronted Mother regarding the prostitution and Mother denied it.

¶7 Kathryn Menendez, a licensed psychologist, conducted an evaluation of Mother on March 6, 2012. Dr. Menendez testified that Mother exhibited very poor parental judgment by participating in acts of prostitution within close proximity to the children. She further testified that engaging in acts of prostitution in the home indicates Mother does not maintain appropriate structure and boundaries to keep the children safe. Dr. Menendez diagnosed Mother with anti-social behavior disorder.

¶8 Mother testified that she never worked as a prostitute, that she never told G.R. she intended for G.R. to become a prostitute, and that G.R. never informed her of any sexual abuse by Father. Mother acknowledged, however, that another man had sexually abused G.R. Mother further acknowledged that she confessed to working as a prostitute as part of a plea bargain, but claimed that she was coerced into providing a false confession by threats of a lengthy prison sentence. Rather than working as a prostitute, Mother maintained she was a hairdresser for a

prostitution syndicate and was apprehended as part of a "sting" operation. Finally, Mother admitted that she knew the court placed a "no contact" order between Father and the children, but she nonetheless facilitated Father's visits with the children.

¶9            Qiana Mwale, the CPS case manager, testified that Mother attended a psychological evaluation and participated in counseling. During her counseling sessions, Mother denied working as a prostitute. Mwale testified that Mother endangered the children by exposing them to "certain environments" while she engaged in acts of prostitution.  The children reported to Mwale that "strange men" were often in their home and G.R. was sexually abused by a "family friend."  Mwale also expressed concern that Mother facilitated visitation between Father and the children notwithstanding the court's "no contact" order and the allegations of sexual abuse.  Given Mother's failure to "tak[e] responsibility" for her conduct causing the children's removal from her home, as well as her continued denial of Father's sexual abuse, Mwale opined that Mother had failed to remedy the circumstances causing the children's out-of-home placement. Finally, Mwale testified that the children's current placement is meeting all of their physical, social, educational, medical and emotional needs and wishes to adopt them, and therefore termination of Mother's parental rights was in the children's best interests.

¶10            As stipulated by the parties, the juvenile court conducted an in camera interview of G.R., who stated that Mother worked as a prostitute and had numerous men in their home.  G.R. explained she had told Mother that the men "bothered her" and "touched" her "in a really weird way," but Mother "never believed" G.R. and told her she was lying.  G.R. also testified that her Father, on repeated occasions, touched her breasts and, when G.R. informed Mother, Mother claimed she was lying.  Mother also told G.R. that "she was going to make [G.R.] a prostitute too." G.R. further stated that she wanted to be adopted by her godmother, who "wants the best for us."

¶11            The court then allowed the parties to listen to the in camera interview in open court.   Upon hearing G.R.'s statements, Father immediately notified the court that he no longer wished to contest the severance.  After conducting a colloquy to ensure Father's waiver was knowing, intelligent, and voluntary, the court terminated his parental rights.

¶12            After taking the matter under advisement as to Mother, the juvenile court granted ADES's motion to terminate Mother's parental rights on the three grounds alleged, finding, in relevant part:

> At [the] hearing, Mother denied having engaged in prostitution, or to having exposed the children to such activities, and claimed that the factual basis supporting her conviction for facilitation to commit illegal control of an enterprise was inaccurate. Mother's position presents the Court with two possibilities: (1) that Mother was untruthful in her plea agreement; or (2) that Mother was untruthful in her current testimony. In either case, Mother is untruthful, and such untruthfulness casts doubt on the veracity of her testimony in the instant proceedings, and on her credibility as a whole.
>
> . . . .
>
> Mother has neglected [the children] . . . . . Specifically, Mother has exposed the children to prostitution under circumstances that demonstrate her inability to provide adequate supervision, and which placed the children at a substantial risk of harm.

The court also found that termination of Mother's parental rights would be in the children's best interests. Mother timely appealed.

## DISCUSSION

¶13        To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in Arizona Revised Statutes ("A.R.S.") section 8-533(B) and must find by a preponderance of the evidence that termination would serve the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). We affirm a court's order terminating a parent's rights unless we conclude, as a matter of law, that no reasonable person could find the essential elements proven by the prescribed evidentiary standard. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94-95, ¶¶ 6, 9-10, 210 P.3d 1263, 1265-66 (App. 2009). On review, we consider the evidence in the light most favorable to upholding the judgment. *Id*. at ¶ 10. Finally, if "clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002).

¶14        Mother contends that ADES failed to prove any statutory basis for terminating her parental rights. Specifically, Mother argues the

"sole actual evidence" supporting the State's theory was G.R.'s statements that Mother engaged in acts of prostitution and that Mother knew Father sexually abused G.R. but Mother had failed to protect her. Mother contends G.R. lacks credibility because G.R. also stated that Mother was involved in two homicides and stole "millions" of "dollars." Thus, Mother argues G.R.'s statements are insufficient to support the severance.

¶15        To justify termination of parental rights under A.R.S. § 8-533(B)(2), ADES must prove the parent has neglected or willfully abused a child. This abuse includes serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child. As defined by statute, neglect means "the inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare[.]" A.R.S. § 8-201(24).

¶16        During her in camera interview, G.R. explained that Mother took the children along and would leave them in the car, alone, for extended periods of time without food, water, or supervision while she participated in acts of prostitution. G.R. also stated that Mother participated in acts of prostitution in the home while the children were present. G.R.'s trial statements were consistent with her previous reports to both her therapist and the case manager. More importantly, the juvenile court expressly found G.R.'s "statements to be genuine and credible," and we defer to the court's evaluation of a witness's credibility. *Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205 (explaining the "juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence observe the parties, judge the credibility of witnesses, and make appropriate findings").

¶17        Moreover, as found by the juvenile court, G.R.'s statements are "corroborated by other evidence presented at the hearing." Before her arrest, Mother negotiated with an undercover police officer and agreed to perform sex acts in exchange for money. In November 2010, as part of a plea agreement, Mother agreed to the following factual basis: "I knowingly facilitated an illegal prostitution enterprise . . . by performing sex acts for money." As further found by the juvenile court, Mother exposed the children to a substantial risk of harm by (1) leaving them unattended for extended periods of time while she performed acts of prostitution, and (2) bringing strangers into her home in the presence of the children. On this record, we conclude that reasonable evidence supports the juvenile court's

finding that Mother neglected the children.[3]  *See Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205.

**CONCLUSION**

**¶18**        We affirm the juvenile court's order terminating Mother's parental rights to the children.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[3]        Because we conclude the juvenile court properly found a statutory basis to terminate Mother's parental rights pursuant to A.R.S. § 8-533(B)(2) (neglect), we need not address the court's additional findings of statutory bases to terminate parental rights under A.R.S. § 8-533(B)(2) (willful abuse) and A.R.S. § 8-533(B)(8)(c) (fifteen months out-of-home placement).  Nor do we address the court's finding that termination of her parental rights is in the children's best interests, as Mother has not challenged that finding.