NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHNNY L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] M.L., M.L., M.L., *Appellees*.

No. 1 CA-JV 14-0087

FILED 1-15-2015

Appeal from the Superior Court in Maricopa County
No. JD509989
The Honorable Aimee L. Anderson, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric K. Knobloch
*Counsel for Appellee Department of Child Safety*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety ("DCS") is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. For ease of reference, we refer to DCS throughout this decision.

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.

---

**B R O W N**, Judge:

¶1        Johnny L. ("Father") appeals the juvenile court's order terminating his parental rights to his three daughters, M.L., M.L., and M.L. (collectively, "the children"). He challenges the sufficiency of the court's findings supporting the grounds for termination and the court's best interests' determination. For the following reasons, we affirm.

**BACKGROUND**

¶2        The children, born in 2007, 2008, and 2009, are the biological children of Father and Kedi L. ("Mother").[2] From the time the children were very young, they were placed in the care of their maternal grandparents through a guardianship. In December 2011, DCS received a report that the children had been abused by their grandfather and the children were temporarily placed with another relative. The abuse allegations were unsubstantiated and the children were returned to the care of their grandfather and his mother, with whom he now lived.

¶3        In February 2012, the juvenile court granted Mother's request to terminate the guardianship. However, in March 2012, DCS received a report that the children remained in the care of their grandfather, and that Mother and Father were using methamphetamines and engaging in domestic violence in the presence of the children. DCS took the children into care and filed a petition alleging they were dependent as to Mother based on neglect and substance abuse, and as to Father based on neglect, domestic violence, and substance abuse. The juvenile court subsequently found the children dependent as to Father and Mother, and approved a case plan of family reunification. In furtherance of the case plan, DCS offered Father individual counseling, substance abuse treatment through TERROS, a psychological evaluation, substance abuse urinalysis testing through

---

[2]        The juvenile court previously terminated Mother's parental rights to the children; however, Mother is not a party to this appeal.

TASC, and parent aide services. The children were again placed with their grandfather and great-grandmother.[3]

¶4 Between June and August 2012, Father tested negative on all required urinalysis testing except for one occasion when he missed his required test. He completed his substance abuse treatment through TERROS, but did not engage in relapse prevention services. In June 2013, Father twice tested positive for methamphetamine from random urinalysis testing. In October 2013, Father was arrested for a domestic violence offense and resisting arrest. DCS then moved to terminate Father's parental rights to the children, alleging that (1) Father was unable to discharge his parental duties due to a history of chronic drug abuse pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3), and (2) he was unable to remedy the circumstances that caused his children to be in out-of-home placement for more than fifteen months pursuant to A.R.S. § 8-533(B)(8)(c).

¶5 The juvenile court held a one-day contested severance hearing in March 2014. Carin Patchin, a DCS case manager, testified that Father was not compliant with the parent aide services DCS had provided and he had been unable to maintain stable housing or income. Patchin also expressed concern that Father had not remedied his substance abuse problem. Patchin further testified that the children's current placement was meeting all of their physical, social, educational and emotional needs and desired to adopt them, and therefore termination of Father's parental rights was in the children's best interests.

¶6 Father testified to having four prior felony convictions, two of which he attributed to his use of methamphetamine. Father also acknowledged that he tested positive for methamphetamine several times since DCS initiated dependency proceedings in March 2012. Father disclosed that he was anticipating a two-and-a-half year prison sentence after pleading guilty to one count of disorderly conduct and one count of resisting arrest, both class 6 felonies, arising from his October 2013 arrest. Because of his impending incarceration, Father conceded he would be unable to provide the children with a stable home.

¶7 Following closing arguments, the juvenile court found that DCS made reasonable efforts to provide Father with services to address his drug abuse, but he tested positive for illegal substances despite completing

---

[3] In January 2013, DCS received a second report alleging that grandfather had abused the children. DCS investigated and found no evidence of abuse.

several substance abuse programs. The court determined there were "reasonable grounds to believe that [Father's] substance abuse . . . will continue for a prolonged indeterminate period of time" based upon Father's June 2013 positive urinalysis test, his failure to re-engage in treatment, and his admission that the longest he had been "clean" was during his incarceration.

¶8        Regarding fifteen months' time in care, the juvenile court found that the children had been in out-of-home placement for two years at the time of the severance hearing. The court also found that Father had not complied with parent aide services since his relapse in June 2013, and that reunification would be unlikely in the near future because Father was currently in custody anticipating a two-and-a-half year prison sentence. The court determined that termination of Father's parental rights would be in the children's best interests because the children are adoptable and deserving of "permanency and stability in a safe, crime free, drug free home."

¶9        The juvenile court restated its findings in a signed minute entry and directed DCS to submit "Findings of Facts, Conclusions of Law, and Order" ("Findings of Fact") within 10 days. Father filed a timely notice of appeal from that signed minute entry, before DCS had submitted its Findings of Fact as directed. DCS later submitted its Findings of Fact, which stated that DCS proved by clear and convincing evidence grounds for termination on both grounds alleged in the motion, but the factual findings related only to substance abuse. Father filed his opening brief in this court challenging the sufficiency of the factual findings as contained in the DCS Findings of Fact. DCS successfully moved to stay the appeal to permit the filing of its amended Findings of Fact addressing fifteen months' time in care. After DCS submitted its amended Findings of Fact, and after the amended Findings of Fact were entered by the juvenile court, Father filed a supplemental notice of appeal and an amended opening brief.

**DISCUSSION**

¶10        To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8–533(B) and must find by a preponderance of the evidence that termination would serve the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.,* 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). To establish the statutory grounds, DCS was required to prove by clear and convincing evidence that Father (1) is unable to discharge his parental responsibilities because of

chronic abuse of controlled substances, and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period; or (2) the children were in an out-of-home placement for at least fifteen months under a court order, Father had been unable to remedy the circumstances causing the out-of-home placement, and there is a substantial likelihood that Father will not be capable of exercising proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(3), (B)(8)(c).

### A. Sufficiency of Findings

**¶11** Father argues that the juvenile court failed to make specific findings of fact to support the grounds for termination, as required by Arizona Rules of Procedure for Juvenile Court 66(F)(2)(a). *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 22, 282 P.3d 437, 441 (App. 2012) (explaining that the juvenile court "must specify at least one factual finding sufficient to support each of those conclusions of law" to comply with Rule 66(F)(2)(a)). However, Father has waived this argument because he failed to raise any objection to the sufficiency of findings in the juvenile court. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21, 153 P.3d 1074, 1081 (App. 2007) (holding that parent waived argument that juvenile court failed to make individualized findings as to the grounds for termination by failing to object in juvenile court).

**¶12** Even without waiver, Father's argument is misplaced because he focuses only on the Findings of Fact submitted by DCS and fails to recognize the entirety of the juvenile court record. The court made specific findings on the record at the conclusion of the contested severance hearing and granted DCS's motion for termination of Father's parental rights based on A.R.S. § 8-533(B)(3) (substance abuse) and A.R.S. § 8-533(B)(8)(c) (fifteen months' time in care). In its subsequent minute entry, the court made additional findings, including: (1) DCS made reasonable efforts to provide Father with services to address his drug abuse, but Father repeatedly tested positive for illegal substances despite completing several substance abuse programs; (2) Father abused methamphetamine and that "[t]here are reasonable grounds to believe that [Father's] substance abuse . . . will continue for a prolonged indeterminate period of time"; (3) the children had been in out-of-home placement for two years at the time of the termination hearing; and (4) that reunification would be unlikely in the near future because Father was anticipating a sentence of two-and-a-half years in prison. Thus, even if Father did not waive his argument regarding the sufficiency of the court's findings, the record plainly indicates that the court made ample factual findings supporting termination.

**B.    Best Interests**

¶13    Father also argues the evidence presented does not support the juvenile court's finding that termination is in the best interests of the children.  Specifically, he argues that the court, in finding that the children were in need of a safe and stable home, was required to consider the proposed adoption plan.  Because the caseworker had testified that the case plan was to have the children's grandfather adopt them, and because evidence showed that grandfather had been previously accused of abusing the children, Father contends there was no "valid" evidence to support the finding that adoption would provide the children with safety and stability.

¶14    Whether termination of parental rights is in the child's best interests is a question of fact.  *Jesus M. v. Ariz. Dep't of Econ. Sec.,* 203 Ariz. 278, 282, ¶ 13, 53 P.3d 203, 207 (App. 2002).  We review the evidence and draw all reasonable inferences in the light most favorable to upholding the juvenile court's factual findings.  *Id.*  Termination of the parent-child relationship is in the child's best interest if the child will benefit from the termination or would be harmed if the relationship continued.  *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 511, ¶ 15, 200 P.3d 1003, 1008 (App. 2008).  "One factor the court may properly consider in favor of severance is the immediate availability of an adoptive placement.  Another is whether an existing placement is meeting the needs of the child."  *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998) (internal citation omitted).

¶15    DCS case manager Patchin opined that termination and adoption by grandfather was in the children's best interest because (1) they had been placed with grandfather for most of their lives; (2) he was meeting all of their physical, social, educational, and emotional needs; and (3) the children would benefit from the stability of a permanent placement.  Although grandfather had been accused of abusing the children on two separate occasions, DCS submitted multiple reports showing that it had investigated both allegations and found no evidence of abuse.  *See Jesus M.*, 203 Ariz. at 280, ¶ 4, 53 P.3d at 205 ("The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings.").  The juvenile court found that the children are adoptable children in need of "permanency and stability which [Father] has been unable to provide" and are in a relative placement willing to adopt them.  Based on the evidence presented at the termination hearing, the juvenile court's best interests finding is supported by the record.

## CONCLUSION

**¶16** We affirm the juvenile court's order terminating Father's parental rights to the children.



Ruth A. Willingham · Clerk of the Court
FILED: ama