NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NATHAN B., *Appellant*,

*v.*

LANA T., J.B., *Appellees*.

No. 1 CA-JV 18-0129
FILED 10-18-2018

Appeal from the Superior Court in Maricopa County
No. JS19133
The Honorable Alysson H. Abe, Judge *Pro Tempore* (Retired)

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Artemis Law Firm, PLLC, Tempe
By Jacqueline Soto
*Counsel for Appellee Lana T.*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge James P. Beene and Chief Judge Samuel A. Thumma joined.

---

**M O R S E**, Judge:

¶1　　　　Nathan B. ("Father") appeals the superior court's termination of his parental rights to J.B.　For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　J.B. was born in January 2007.　For the first few months of his life, he lived with his biological parents, Father and Renee R. ("Mother"). J.B. began living with Lana T. ("Grandmother"), J.B.'s paternal grandmother, when he was approximately nine months old.　Since then, Grandmother has provided a stable home and cared for J.B.　When J.B. was about seventeen months old, Mother passed away.

¶3　　　　In July 2008, Grandmother was appointed guardian of J.B. by an Illinois court, where Grandmother and J.B. then resided.　Grandmother testified that she obtained this guardianship of J.B. because of Father's ongoing drug abuse and inability to care properly for J.B.　Father was incarcerated at the time, but he did not object and testified that he initially "didn't have a problem" with the guardianship.　Father never inquired further about the guardianship after Grandmother gained custody and never moved to set aside or alter the guardianship.

¶4　　　　J.B. was diagnosed with autism and, in September 2015, Grandmother moved to Arizona to obtain autism-related services for J.B. Grandmother stated that Father did not object to the move to Arizona, but Father claimed that he "wasn't really given a choice."　In the nearly eight years J.B. lived in Illinois before their move to Arizona, Father never attended J.B.'s medical appointments.　Father also failed to participate in any of J.B.'s school functions—including parent-teacher conferences and meetings related to an individualized education plan ("IEP") for J.B.'s autism.

¶5 The last time Father saw J.B. was in 2014. Father is not allowed to leave Illinois given the consequences of his criminal convictions, and Father has not offered to purchase J.B. a plane ticket to come visit him. After J.B.'s birth, Father was incarcerated numerous times, spent nearly seven years in custody, and has not had a stable home for the majority of J.B.'s life. When Father was not incarcerated, he often lived with Grandmother and J.B. (before they moved to Arizona in September 2015). During one year while he worked at a grocery store, Father sometimes brought home food for Grandmother and J.B.

¶6 During his entire time in Arizona with Grandmother, J.B. has done well in school, has gone to occupational therapy and social skills therapy, and has continued his IEP. Father has spoken with J.B. on the telephone off and on, including once a week or every other week while Father was incarcerated. Father has twice sent a few things, such as clothing, to J.B., through family members. Father also helped purchase an Xbox for J.B. during Christmas of 2016. Father claimed that he had not sent more gifts to J.B. because he "wasn't allowed to know [Grandmother's] address." He further stated he did not help J.B. financially because Grandmother told him to "not worry about it" and to only worry about himself.

¶7 In July 2017, Grandmother filed a petition for termination of Father's parental rights to J.B. The petition sought termination on the grounds of abandonment, neglect, substance abuse, length of felony incarceration, and felony conviction. In February 2018, the Arizona court in this case and the Illinois court that granted the guardianship in 2008, conferred by telephone and determined that Arizona would be a more convenient forum and that Illinois would not retain jurisdiction.[1] *See* Ariz. Rev. Stat. ("A.R.S.") § 25-1033(1). Grandmother testified that Father does not have a stable home or job, is in and out of prison or jail, and has not provided financially for J.B. Father testified that when he was not incarcerated, any attempts to provide for J.B. were thwarted by Grandmother. He further testified that he now has his own place where he lives with "roommates."

---

[1] Per this telephonic conference call with the Illinois superior court judge, it appears that the guardianship that originated in Illinois continues in Arizona.

**¶8**          In March 2018, the superior court held a contested termination hearing and determined that Grandmother had not proven by clear and convincing evidence grounds for termination based on substance abuse and criminal conviction.   The court found, however, that Grandmother proved, by clear and convincing evidence, grounds for termination based on abandonment.  *See* A.R.S. § 8-533(B)(1).  The court also found that Grandmother proved, by a preponderance of the evidence, that termination of Father's rights was in J.B.'s best interests.

**¶9**          Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A).

## DISCUSSION

**¶10**          We view the evidence "in a light most favorable to affirming the trial court's findings." *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 106 (1994).  Further, we will uphold the superior court's findings of fact unless they are unsupported by reasonable evidence, and we will affirm a severance order unless it is clearly erroneous.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶11**          To terminate parental rights, the superior court must find, by clear and convincing evidence, at least one of the statutory grounds set out in A.R.S. § 8-533, and that termination is in the best interests of the child. A.R.S. § 8-533(B); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

**¶12**          Father argues that the superior court erred in finding that he abandoned J.B.  Abandonment is not measured by a parent's subjective intent; rather, it is measured by a parent's conduct.  *Michael J.*, 196 Ariz. at 249, ¶ 18.  The superior court considers "whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship" in addressing severance of parental rights based on abandonment. *Id*. at 249-50, ¶ 18; *see also* A.R.S. § 8-531(1).  "Failure to maintain a normal parental relationship with the child without just cause for a period of six months" is prima facie evidence of abandonment. A.R.S. § 8-531(1).

**¶13** Father argues he did not abandon J.B. but that Grandmother interfered with his ability to maintain a parent-child relationship with him. *See supra* ¶ 7. He asserts that because Grandmother restricted his ability to interact with J.B., she may not petition to terminate his rights based on abandonment. Despite Father's testimony that Grandmother would not allow him to provide support to J.B. and thwarted his opportunities to properly parent him, Father never made any additional efforts to parent J.B. otherwise nor did he seek legal advice. Moreover, when Grandmother moved to Arizona with J.B. in 2015, it was not until almost two years later, in 2017, that Father sought to assert parental rights, doing so only after she filed a petition to sever Father's parental rights.

**¶14** The superior court held that Father's relationship with J.B. was "more like a long-distance friend and not that of a parent who is present on a day-to-day basis." Even when he was not incarcerated, Father never attended any of J.B.'s doctor's appointments or school meetings when J.B. was living in Illinois, he did not provide J.B. with gifts or clothing on more than a few occasions, he only speaks with J.B. on the telephone intermittently, he has not provided meaningful financial support for him, and he has not physically seen him for approximately four years. Nor did Father ever attempt to set aside the guardianship that was put in place nearly a decade ago. "When, as in the present case, circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *In re Pima Cty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 97 (1994). Father's efforts to exercise parental rights were neither persistent nor vigorous. On this record, Father has not shown that the superior court's finding of abandonment was clearly erroneous or unsupported by reasonable evidence.[2]

---

[2] Although Father does not challenge the best-interests finding, the evidence introduced at the termination hearing shows that J.B. is in a potential adoptive placement that is meeting his needs, and amply supports the superior court's best-interests finding. *See Alma S. v. Department of Child Safety*, 799 Ariz. Adv. Rep. 27, ¶ 14 (Sept. 14, 2018).

## CONCLUSION

¶15     For the foregoing reasons, we affirm the superior court's order terminating the parent-child relationship between Father and J.B.



AMY M. WOOD • Clerk of the Court
FILED:   AA