NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE GUARDIANSHIP AS TO J.L., A.B., and S.B.

No. 1 CA-JV 25-0050

FILED 12-04-2025

---

Appeal from the Superior Court in Maricopa County
No.  JD31632
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellees J.L., A.B., S.B.*

_____

**MEMORANDUM DECISION**

Vice Chief Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Cynthia J. Bailey joined.

_____

**W E I N Z W E I G**, Vice Chief Judge:

**¶1**        Michelle C. ("Mother") appeals the superior court's appointment of maternal grandparents as permanent guardians for her three minor children.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother is the natural parent of the three children involved in this appeal and another adult son.  When the superior court ordered that permanent guardians be appointed for the children, the minor children were 17, 13 and 11 years old.

**¶3**        The children lived with their maternal grandparents in 2013 and 2014, and for a short period in 2015 when the Department of Child Safety ("DCS") fielded reports that Mother was abusing alcohol and physically abusing the oldest child.

**¶4**        Mother threatened to kill the children in November 2015 and tried driving herself and the children into a train.  She was intoxicated and on methamphetamine.  The children were hysterical and "screaming for help" when police arrived.  DCS removed the children and placed them with their maternal grandparents. DCS petitioned the superior court to find them dependent as to Mother on the grounds of abuse and neglect.

**¶5**        Two years later, in April 2017, the superior court returned the children to Mother's custody and dismissed the dependency.  Mother had been sober during that period, and she had successfully participated in supervised visitation and drug treatment.

**¶6**        Mother relapsed in 2021.  For the next three years, the children bounced between Mother and maternal grandparents.  During this period, the children saw Mother abuse alcohol and drugs, engage in domestic violence with multiple romantic partners and attempt a second suicide.  Mother neglected and physically abused the children.  She also disenrolled

the children from school because she was unwilling to drop them off.  The oldest child had 76 absences.

¶7 DCS received reports in August 2023 that Mother was neglecting the children's basic and medical needs.  Grandmother explained she had been parenting the children for several months and could not obtain medical treatment for them because Mother had disappeared for over a month.

¶8 Mother's adult son turned eighteen in 2023.  Mother and her boyfriend assaulted that child just before he turned eighteen.  Mother denied her boyfriend did anything wrong.  She was later convicted of assault.

¶9 DCS again removed the children in September 2023 and placed them with maternal grandparents.  DCS filed a second dependency petition in September 2023.  The superior court found the minor children dependent as to Mother on four grounds: neglect, untreated mental health, domestic violence and substance abuse.

¶10 For their part, the children participated in therapy and reported a history of trauma, physical abuse and neglect while in Mother's care.  The oldest child expressed "fear" of being returned to Mother "due to her behaviors," adding that Mother was "dragging [the children] with her," and he was "unsure if [she could] truly provide."  The middle child told the therapist that Mother "often times hit her children" and she also "fear[ed] going back," adding that Mother "lack[ed] responsibility."  The youngest child said she "refuse[d] to go live with [M]other due to her past inconsistent behaviors at parenting" and reported she feels "forced" to move back in with Mother.

¶11 The superior court later changed the case plan to family reunification, concurrent with guardianship, and ordered the children's attorney to file a motion for appointment of a permanent guardian.  The court ordered Mother to participate in drug testing and treatment, counseling, a psychological consultation and supervised visitation.

¶12 By May 2024, DCS reported that Mother completed all required services and demonstrated sobriety, but lacked stability and safe housing, and continued speaking to her incarcerated boyfriend who had a history of domestic violence and substance abuse.

¶13 Mother relapsed five months later and the children's attorney moved the superior court to appoint the maternal grandparents as their

permanent guardians. The court held an evidentiary hearing on that motion. The DCS case manager testified as an expert witness. He said that DCS opposed the guardianship motion because he believed Mother was a safe and appropriate parent. He conceded, however, that he never read the children's therapy records.

¶14 The superior court appointed maternal grandparents as the children's permanent guardians. It held, among other things, that further efforts of reunification would be unproductive because although the children want to continue visitation, they have a traumatic history with Mother and do not trust her to keep them safe or to provide for their essential needs. Mother timely appealed. We have jurisdiction. *See* A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A).

## DISCUSSION

¶15 We review an order of guardianship for an abuse of discretion and will affirm unless it is clearly erroneous. *In re Guardianship of Kelly*, 184 Ariz. 514, 518 (App. 1996); *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997). The superior court "is in the best position to weigh the evidence, observe the parties, [and] judge the credibility of witnesses." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We will accept the superior court's factual findings "unless no reasonable evidence supports those findings." *Id.*

¶16 A permanent guardianship may be ordered when in a child's best interests, and (1) the child was found dependent; (2) the child has been in the prospective permanent guardians' custody for at least nine months; (3) DCS has made reasonable reunification efforts and further efforts would be unproductive; and (4) the likelihood of adoption is remote or termination would not be in the child's best interests. A.R.S. § 8-871(A)(1)–(4). The "primary consideration" of the court is the "physical, mental and emotional needs and safety of the child." A.R.S. § 8-871(D).

¶17 Mother challenges only the third requirement, arguing that no reasonable evidence shows further reunification efforts would have been unproductive. We disagree. The record has ample evidence to support the third element. That evidence includes the children's therapy records in which all three minor children expressed fear about returning to Mother because she could not keep them safe and would only drag them along. Add to that Mother's extensive drug abuse over many years and that she continued to speak with her incarcerated boyfriend. The superior court resolves conflicts of evidence, and we do not reweigh the evidence on

review. *See Jesus M.*, 203 Ariz. at 282, ¶ 12. We stress that in permanent guardianship proceedings, a primary consideration is the children's safety and emotional needs. *See* A.R.S. § 8-871(D).

**¶18** Mother argues the superior court should not have considered the children's opinion on whether a permanent guardianship was appropriate. She relies on *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9 (App. 2019). That reliance is misplaced. There, we vacated an order *terminating* a father's parental rights to his three-year-old child because no evidence existed in the record to support an earlier dependency order. *Id.* at 13, ¶ 1. Here, we affirm an order appointing maternal grandparents as permanent guardians, which is unlike the termination of parental rights.

**¶19** "A court order vesting permanent guardianship with an individual divests the birth or adoptive parent of legal custody of or guardianship for the child but *does not terminate* the parent's rights." A.R.S. § 8-872(I) (emphasis added); *see also* A.R.S. § 8-871(A)(4) (a court may establish a permanent guardianship only when "termination of parental rights would not be in the child's best interests."). Unlike termination, a permanent guardianship may be revoked and parental custody restored under certain circumstances. A.R.S. § 8-873(A)(1) ("The child, a parent of the child, the guardian of the child or any party to the dependency proceeding may file a petition for the revocation of an order granting permanent guardianship if there is a significant change of circumstances, including [when the] child's parent is able and willing to properly care for the child.").

**¶20** What is more, when asked to revoke a guardianship, the court must consider the "child's position on the revocation of the guardianship if the child is at least twelve years of age." A.R.S. § 8-873(C)(1). This statute shows the legislature believed a child's position is relevant to the guardianship process. Here, two of the minor children were at least twelve years old, and reasonable evidence was presented that a guardianship order was in the children's best interest.

## CONCLUSION

**¶21** We affirm.

