NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.E.

No. 1 CA-JV 25-0093

FILED 12-05-2025

---

Appeal from the Superior Court in Maricopa County
No. JD508769
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones, Mesa
By H. Clark Jones
*Counsel for Appellant Da'Shawn E.*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellee Child K.E.*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Vice Chief Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

---

**P E R K I N S**, Judge:

¶1        Da'Shawn E. ("Father") appeals the juvenile court's order terminating his parental rights to his daughter Karla (a pseudonym). Mother is not a party to this appeal. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Father is the biological parent of Karla, born in November 2023. The Department of Child Safety ("DCS") removed Karla at birth because she was born substance-exposed. In late November 2023, Father told DCS that he was homeless and abusing drugs. He later established paternity of Karla.

¶3        From late 2023 to early 2024, DCS offered Father various reunification services, including substance-abuse treatment, drug testing, parenting classes, and supervised visitation. He failed to participate in the substance abuse treatment and parenting classes. He only submitted one drug test, which returned positive for fentanyl, amphetamine, methamphetamine, and THC. He did, however, participate in supervised parenting time starting in January 2024. But he attended less than one-third of the scheduled visits. And during those visits, he frequently fell asleep, refused to engage with Karla, or left early. He stopped attending visits altogether in March 2024.

¶4        DCS petitioned the court to find Karla dependent as to Father in February 2024. Because Father was homeless, DCS was unable to locate him until June 2024, when Father was arrested and incarcerated for drug possession. DCS served Father with the dependency petition in August 2024 while he was in custody. During his incarceration, Father did not request visitation or attempt to contact DCS. He was released in September 2024.

¶5        In October 2024, Father emailed DCS about enrolling in parenting classes. DCS responded, but Father never followed up. In

December 2024, Father was arrested and incarcerated again, this time for failing to report to his probation officer. DCS moved to terminate his parental rights as to Karla, alleging grounds of abandonment, substance abuse, and six- and nine-month time in care. Father was released from custody in March 2025. Father did not request visitation or contact DCS during his second incarceration.

¶6        In April, he reported to DCS that he had completed an inpatient substance-abuse treatment program. Father then contacted DCS requesting to visit Karla. But DCS never processed that request because, a few weeks later, in May 2025, the court held a contested termination hearing and then issued an order terminating Father's parental rights based on all three alleged grounds.

¶7        Father appealed, and we have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A)(1).

## DISCUSSION

¶8        Parents have a fundamental but not absolute interest in the care and custody of their children. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). The juvenile court may terminate parental rights if it finds clear and convincing evidence of statutory grounds for termination under Arizona Revised Statutes Section 8-533(B), and termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). We view the evidence "in the light most favorable to upholding" the termination order, accepting the court's factual findings if supported by reasonable evidence. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30, 32 (2023). We will affirm the court's legal conclusions unless clearly erroneous. *Id.* at ¶ 31.

¶9        Proving abandonment requires clear and convincing evidence that the parent failed "to provide reasonable support and maintain regular contact with the child." A.R.S. §§ 8-201(1) (cleaned up), -533(B)(1); *Brionna J.*, 255 Ariz. at 479–80, ¶ 31. The "failure to maintain a normal parental relationship with the child without just cause for a period of six months" is prima facie evidence of abandonment. A.R.S. § 8-201(1). In other words, the party seeking termination must prove: "(1) failure to maintain a normal parental relationship; (2) for six months; and (3) without just cause." *In re B.W.*, ___ Ariz. ___, ___, ¶ 18, 572 P.3d 88, 95 (2025).

¶10        Reasonable evidence supports the court's finding that Father abandoned Karla. Father failed to maintain a normal parental relationship

with Karla from her birth until the termination hearing 18 months later. Although Father participated in supervised visitation briefly, his poor attendance and lack of engagement during those visits support that he did not have a normal parental relationship. Father then had no contact with Karla from March 2024 through the May 2025 termination hearing. During those 14 months, Father made virtually no effort to maintain contact with Karla until shortly before the termination hearing. His only effort was sending a single email to DCS requesting visitation, which he failed to follow up on. Father did not send Karla letters, gifts, or cards, or provide any financial support. The juvenile court did not err in finding that DCS proved by clear and convincing evidence that Father had abandoned Karla.

**¶11**     Father points to his drug issues and incarceration, suggesting that his abandonment of Karla was not his fault. Neither substance abuse nor incarceration provides "just cause" for failing to maintain a normal parental relationship. "Just cause" requires "a reasonable and fair justification" for failing to maintain a parent-child relationship. *See In re B.W.*, ___ Ariz. at ___, ¶ 24, 572 P.3d at 96.

**¶12**     Abusing substances is not a fair or reasonable justification. And a parent's imprisonment does not provide "just cause" unless the parent "act[s] persistently to establish the relationship however possible and [] vigorously assert[s] his legal rights to the extent necessary." *Michael J.*, 196 Ariz. at 250, ¶ 22. Unless an incarcerated parent requests reunification services, DCS need not provide such services before moving to terminate on the abandonment ground. *Steven M. v. Dep't of Child Safety*, 254 Ariz. 426, 430, ¶ 14 (App. 2023). Father made no such request during his incarceration, nor did he make any other effort to maintain a relationship with Karla. On this record, DCS's failure to provide Father with visits while he was incarcerated was not "just cause" for Father's failure to maintain a normal parental relationship with Karla.

**¶13**     Father contends he could not "fully engage in the case until August 2024," when DCS served him with the dependency petition approximately nine months after DCS removed Karla. But DCS provided reunification services before serving him. Father does not explain how his delayed receipt of the petition prevented him from participating in those services. And the delayed service certainly does not explain Father's failure to maintain a relationship with Karla during the nine months after he was served.

**¶14**     Because we affirm termination on the abandonment ground, we do not address the juvenile court's findings on the substance-abuse and

time-in-care grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002). And Father did not challenge the court's best interests finding, so we do not address it either. *See Michael J.*, 196 Ariz. at 249, ¶ 13 ("[Appellant] has never challenged the superior court's best interest finding. We therefore accept that finding and do not address it further.").

**CONCLUSION**

¶15 We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR