NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEPHANIE Z., DAVID S., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.Z., G.R., S.S., *Appellees*.

No. 1 CA-JV 14-0239
FILED 3-12-2015

Appeal from the Superior Court in Maricopa County
No. JD510170
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

COUNSEL

Gates Law Firm LLC, Buckeye
By S. Marie Gates
*Counsel for Appellant Stephanie Z.*

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant David S.*

Arizona Attorney General's Office, Mesa
By Eric Knobloch
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Randall M. Howe joined.

---

**N O R R I S**, Judge:

**¶1**        Stephanie Z. ("Mother") appeals from the juvenile court's order terminating her parental rights to her minor children, D.Z., G.R., and S.S.; and David S. ("Father") appeals from the juvenile court's order terminating his parental rights to S.S.  On appeal, Mother argues the Department of Child Safety ("DCS")[1] failed to present sufficient evidence it had provided  appropriate reunification services and termination was in the best interests of the children, while Father argues DCS failed to present sufficient evidence to terminate his parental rights to S.S. under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1) (Supp. 2014) (abandonment).[2]  For the reasons discussed below, we disagree with Mother's and Father's arguments and affirm the juvenile court's termination order.

I.        Mother's Arguments

**¶2**        As restated for clarity, Mother argues the juvenile court should not have terminated her parental rights because DCS failed to

---

[1]In accordance with Arizona Rule of Civil Appellate Procedure 27, we have substituted the Department of Child Safety ("DCS") for Arizona Department of Economic Security ("ADES") because the pertinent responsibilities of ADES have been transferred to DCS. Senate Bill 1001, § 157, 51st Leg., 2d Spec. Sess. (Ariz. 2014) (enacted).

[2]Although the Arizona Legislature amended the statutes citied in this decision after the first day of the termination hearing, the amendments are immaterial to the resolution of this appeal, and, thus, we cite to the current versions of these statutes.

prove it provided appropriate reunification services, specifically family therapy, or an appropriate alternative to family therapy.[3]

¶3         To terminate parental rights under A.R.S. § 8-533(B)(8)(c), a juvenile court must find, as relevant here, that DCS "has made a diligent effort to provide appropriate reunification services." DCS "must provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37, 971 P.2d 1046, 1053 (App. 1999). We will not reverse a juvenile court's factual finding that DCS complied with its statutory duty if it is supported by reasonable evidence and not clearly erroneous. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002) (appellate court will accept the juvenile court's findings of fact unless no reasonable evidence supports the findings, and will affirm a termination order unless it is clearly erroneous).

¶4         DCS originally removed the children from Mother's care after receiving reports of domestic violence and inappropriate touching between two of the children. After the juvenile court found the children dependent as to Mother, DCS instituted a case plan for family reunification which called for individual therapy for each of the children and Mother, until they were ready for family therapy. Although the children remained in out-of-home care for nearly two years, they had failed to make sufficient progress in their individual therapy to benefit from family therapy. It was not their lack of progress in therapy or the absence of family therapy, however, that prevented reunification. Instead, as the juvenile court found, it was Mother's "lack of consistent engagement in services" that prevented reunification. The juvenile court explained:

---

[3]Mother also seems to argue DCS failed to present sufficient evidence to support the juvenile court's order terminating her parental rights under A.R.S. § 8-533(B)(3). Because clear and convincing evidence supports the juvenile court's termination order under A.R.S. § 8-533(B)(8)(c) (15-months' out-of-home care), we need not address the sufficiency of the evidence under A.R.S. § 8-533(B)(3). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

DCS provided Mother with numerous services that were designed to facilitate the reunification of Mother and her children. She actively engaged in some but not all of those services.

. . . .

Moreover, to date, Mother has failed to demonstrate that she is capable of maintaining stable housing and stable employment. The limited documentation of Mother's housing and employment were insufficient to demonstrate the stability that is needed in order for her to adequately parent any of her children. Her failure to consistently drug test is another significant barrier to her ability to parent any of her children. Additionally, [Mother's evaluating psychologist] testified that after two years of being separated from her children and engaging in some services, Mother is still unable to effectively parent her children. [Mother's psychologist] opined that Mother's failure to consistently engage in services throughout the course of this proceeding, coupled with her evaluation of Mother demonstrates a pattern and based upon the duration of time that has passed since the children were removed from Mother's home, it is unlikely that Mother will be able to make the changes that are necessary in order for her to effectively parent her children.

¶5 The record amply supports these findings. DCS provided Mother with a number of services including supervised visitation, and parent aide services, which, according to the case manager, were designed to improve her ability to care for her children. Although, as the juvenile court noted, she engaged in some services, her engagement was inconsistent. Further, the record shows that Mother *herself* was not ready for family therapy. The case manager testified at the termination hearing that Mother did not consistently provide proof of individual therapy or make the behavior changes outlined in the case plan "to be able to be recommended to do family therapy with the children in order to have family reunification" occur. The case manager noted in her progress

reports, "Family therapy has not been recommended yet by the therapist because [Mother] has not provided the department with an individual counselor who is recommending that [Mother] is ready for family therapy." And finally, the record supports the juvenile court's summary of Mother's evaluating psychologist's termination hearing testimony.

¶6            Reasonable evidence thus supports the juvenile court's finding that DCS made a diligent effort to provide appropriate services designed to reunify the family, and Mother's "lack of consistent engagement in services," and not the absence of family therapy, prevented reunification.

¶7            Mother also argues termination was not in the children's best interests because they did not receive family therapy and the family was "undeniably bonded." Although Mother testified she loved and was bonded to her children, termination of the parent-child relationship is in a child's best interests if the child would affirmatively benefit from termination or be harmed by the continuation of the relationship. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App. 2004). Here, the juvenile court found termination was in the children's best interests because all three children were adoptable, were "very much in need of permanency," Mother had not demonstrated she was "in a position to provide the children with that permanency," and "termination of [the] parental rights would further the plan of adoption."

¶8            The record fully supports the juvenile court's findings. The case manager testified termination would benefit the children by providing them with stable housing, security of income, and the ability to attend school, while removing them from "possible exposure to substance abuse" and domestic violence. She also testified the children were in prospective permanent adoptive homes, which were meeting their physical, social, educational, and emotional needs.

¶9            For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to her children.

II.      Father's Argument

¶10            Father essentially argues the juvenile court should not have terminated his parental rights to S.S. under A.R.S. § 8-533(B)(1) because DCS failed to present sufficient evidence he had abandoned her. Specifically, Father argues Mother and DCS prevented him from establishing a relationship with S.S.

¶11 "Abandonment" is statutorily defined as: "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1) (Supp. 2014).

¶12 The juvenile court found Father had no contact with S.S. for the "vast majority of her life." Although Father had lived with Mother and S.S. for the first year of S.S.'s life, he was incarcerated for approximately the next five years, and sporadically thereafter. During the time he was incarcerated, he had no contact with S.S. Although Father argues Mother prevented him from establishing a relationship with S.S., neither during nor after his incarceration did he send S.S. any letters, cards, or gifts or offer to pay child support. The record amply supports the juvenile court's finding that, "Father's prolonged absence from [S.S.]'s life during which he has had no communication or visitation with her is far from what is expected in a normal parental relationship."

¶13 And, although Father also argues DCS prevented him from establishing a relationship with S.S., the case manager testified he only made sporadic efforts to contact DCS about S.S. Indeed, at the hearing, Father acknowledged "[t]he bottom line is I haven't been there as I should have been, as a father, as a parent, I haven't, and that's not an excuse. It's something that happened." As the juvenile court found, Father failed to document his visitation requests and, further, did not request visitation from the court after it found S.S. dependent. The record amply supports the juvenile court's finding that Father's conduct demonstrated he had abandoned S.S.:

> Father admits that he has never sent [S.S.] any cards, gifts or letters. Nor has he paid any child support for her. Father's prolonged absence from [S.S.]'s life during which he has had no communication or visitation with her is far from what is expected in a normal parental relationship. Moreover, Father's few informal requests for visitation fall significantly short of what is expected and required of a parent. While Father may very much want to parent [S.S.], his "conduct speaks louder than words or subjective intent." Indeed, his inaction demonstrates by clear and convincing evidence that he has abandoned [S.S.].

(citation omitted).

## CONCLUSION

**¶14** For the foregoing reasons, we affirm the juvenile court's order terminating Mother's and Father's parental rights.



Ruth A. Willingham · Clerk of the Court
FILED: ama