NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KIMBERLEE D., KEVIN M., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.D., K.D., *Appellees*.

No. 1 CA-JV 16-0012
FILED 9-29-2016

---

Appeal from the Superior Court in Maricopa County
No. JD20875
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee* Department of Child Safety

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant* Kimberlee D.

David W. Bell, Higley
*Counsel for Appellant* Kevin M.

---

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

---

**G O U L D**, Judge:

¶1            Kimberlee D. ("Mother") and Kevin M. ("Father") appeal from the juvenile court's order terminating their parental rights.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2            Mother and Father are the parents of R.D., born in 2010, and K.D., born in 2012.  In September 2011, police contacted the Department of Child Safety ("DCS") after investigating a domestic violence incident between Mother and Father; police reported that during the investigation, they observed unsanitary conditions in the home.

¶3            A DCS case manager met with Mother to discuss the report.  During the meeting, Mother disclosed a long history of domestic violence between her and Father, including incidents where Father beat her to the point of unconsciousness in front of R.D., choked her, and threatened to kill her and R.D.

¶4            R.D. was removed from the home, and DCS filed a dependency petition.  The petition alleged R.D. was dependent on several grounds, including abuse and domestic violence.  R.D. was placed in the temporary care of his maternal grandparents ("Grandparents").  When K.D. was born a few months later, DCS filed a petition alleging he was dependent on the same grounds as R.D., and he was also placed with his Grandparents.  The juvenile court subsequently found both children dependent, and ordered a case plan of reunification concurrent with severance and adoption.

¶5            Initially, parents did not actively participate in the services; as a result, in February 2013, DCS moved to terminate their rights.  However, after DCS filed its motion, parents began engaging in services.  Thus, in November 2013, following a three-day severance hearing, the juvenile court denied DCS's motion, finding that severance was not currently in the best interests of the children, and that parents could benefit from additional

services. However, in denying the motion the juvenile court noted that Father "needs to continue to address his frustration[,] tolerance[,] and anger issues," and that he was currently "unable to independently parent the children." The court also cautioned Mother that she needed to strengthen her "empowerment . . . as an individual," and that her rights may be in jeopardy if she remained in her relationship with Father and he failed to address his anger issues.

¶6 In June of 2014, the parents were granted physical custody of the children. However, the children were temporarily returned to Grandparents' custody when the parents were evicted from their apartment, and DCS discovered the living conditions in their apartment unsuitable for the children. In August 2014, parents corrected their housing situation, and the children were returned to their physical custody.

¶7 Approximately two weeks after the children were placed in parents' custody, R.D. disclosed to his therapist that domestic violence was occurring in the home. R.D. later told DCS caseworkers that Father hit him, and that he also hit Mother. The caseworkers also spoke with K.D., who told them that Father hit Mother, R.D., and the dog.

¶8 As a result, in March 2015, DCS once again moved for termination. Following a hearing, the juvenile court terminated Mother and Father's rights on the grounds of nine months' and fifteen months' time-in-care. *See* Ariz. Rev. Stat. ("A.R.S."), sections 8-533(B)(8)(a) and (c) (termination based on nine months' and fifteen months' time-in-care). The court also determined that termination was in the best interests of the children. Mother and Father appealed.

## DISCUSSION

¶9 Mother and Father challenge the sufficiency of the evidence regarding the grounds for termination, as well as the juvenile court's best interests finding.

¶10 To terminate the parent-child relationship, the juvenile court's findings must be based on clear and convincing evidence. A.R.S. § 8–537(B) (2014); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Id.* As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Id.* Finally, if the evidence supports

3

termination on any one ground, we need not consider challenges as to other grounds. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

## I.     Grounds for Termination

**¶11**        The juvenile court terminated Mother and Father's rights based on fifteen months' time-in-care.[1]  Termination on this basis required DCS to prove, by clear and convincing evidence, that: (1) the children have been in an out-of-home placement for fifteen months or longer, (2) DCS has made diligent efforts to provide appropriate reunification services, (3) both parents are unable to remedy the circumstances that led to the out-of-home placement, and (4) there is a substantial likelihood that the parents will not be capable of exercising proper and effective parental care and control of the children in the near future.  A.R.S. § 8-533(B)(8)(c).

**¶12**        Mother and Father do not challenge the juvenile court's findings regarding the length of time-in-care or that DCS provided appropriate services.  Rather, Mother and Father argue that DCS failed to prove they were unable to remedy the circumstances that led to the children's out-of-home placement, and that they were incapable of properly parenting the children.

**¶13**        The juvenile court's findings are supported by the record. Father's problems with anger and violence against Mother and R.D. led to removal of the children from the home, and was the primary issue that both parents needed to address to regain custody of their children.  Mother told DCS, the police, and her own mother that she was experiencing domestic violence at the hands of Father.  Nonetheless, despite participating in services for approximately two to three years and being warned by the juvenile court at the first severance hearing, Father continued to physically abuse and threaten Mother and the children.  Although both Mother and Father[2] have repeatedly minimized and denied these incidents of domestic

---

[1]        Because we conclude that the evidence supports termination under A.R.S. § 8-533(B)(8)(c), we need not consider Mother and Father's challenges to the juvenile court's termination finding based on A.R.S. § 8-533(B)(8)(a). *See Michael J.*, 196 Ariz. at 251, ¶ 27.

[2]        Father does admit, however, to having a problem with domestic violence before he met Mother.  Father pled guilty to a domestic violence charge after giving his girlfriend a fat lip in 2004 or 2005.  In 2009, he pled guilty to a domestic violence offense after shoving a friend's girlfriend over

violence, we defer, as we must, to the juvenile court's determination that the parents were not credible. *See Jesus M.*, 203 Ariz. at 280, ¶ 4 (appellate court defers to juvenile court's credibility assessments).

¶14        The juvenile court's findings are also supported by Dr. Thal's testimony. Dr. Thal performed three psychological evaluations of both parents, in 2012, 2013, and 2015. In 2012, Dr. Thal diagnosed Father with antisocial personality disorder, and concluded that a child in his care could be at risk for neglect, abuse, and exposure to domestic violence. At the 2015 evaluation, Dr. Thal found Father's insight and judgment exactly the same as in 2012; Father continued to deny any domestic violence problem. Dr. Thal concluded that Father was unlikely to be able to parent in the foreseeable future because, after two to three years of services, he had failed to make any progress in addressing his anger and violence issues.

¶15        Similarly, Dr. Thal testified that Mother had not made any significant progress since her 2012 evaluation. In 2015, Dr. Thal diagnosed Mother with dependent personality disorder, finding that her desire to maintain her relationship with Father would interfere with her ability to protect herself and her children. Dr. Thal also testified that Mother's 2012 and 2015 evaluations were essentially the same; in spite of the facts showing neglect and abuse, Mother did not recognize these issues as valid concerns. Thus, he concluded that Mother was not likely to make any changes in the near future allowing her to provide a safe home environment for the children.

¶16        Accordingly, we conclude the record supports termination of the parents' rights under A.R.S. § 8-533(B)(8)(c).

## II.    Best Interests

¶17        Mother and Father also contend that the juvenile court erred in finding that a termination of parental rights was in the best interests of the children.

¶18        "To prove that the termination of parental rights would be in a child's best interests, [DCS] must present credible evidence demonstrating 'how the child would benefit from a severance *or* be harmed by the continuation of the relationship.'" *Lawrence R. v. Ariz. Dep't of Econ.*

---

a bed during a dispute. Father also admits to being the caregiver of an 18-month-old who was discovered to have injuries in 2009. As part of the investigation, he admitted to the police that he caused the bruises on the child's head, cheeks, and right thigh, and that he bit her cheek.

*Sec.*, 217 Ariz. 585, 587, ¶ 8 (App. 2008) (quoting *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004)). Evidence showing a child is adoptable is sufficient to satisfy a finding that the child would benefit from the termination of parental rights. *Maricopa Cty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352 (App. 1994). In addition, the juvenile court may also consider whether the child's existing placement is meeting the child's needs. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

**¶19** The record supports the juvenile court's best interests finding. Apart from a few weeks in the summer of 2014, R.D. has lived with Grandparents since he was 18 months old, and K.D. has lived with them since birth. Grandparents are willing to adopt the children, and are providing for their needs, both physically and emotionally. Although the children have behavioral and developmental needs, Grandparents are able to make sure the children receive the structure and therapy they need.

## CONCLUSION

**¶20** For the reasons above, we affirm the juvenile court's order terminating Mother and Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA