NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

AMBER D., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.E., *Appellees.*

No. 1 CA-JV 17-0043
FILED 10-24-2017

Appeal from the Superior Court in Maricopa County
No.  JD528503
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C R U Z**, Judge:

¶1        Amber D. ("Mother") appeals the superior court's January 26, 2017 order severing her parental rights.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of C.E., born in 2010.  Mother and C.E.'s father ("Father")[1] divorced about a year later.  After the divorce, Father exercised visitation with C.E. while Mother and C.E. lived in Texas.

¶3        In spring 2015, Mother obtained a restraining order against Father after C.E. disclosed Father was physically and sexually abusing her.[2] Approximately a month later, Mother asked her parents ("Grandparents") to pick up C.E. for a six-week visit in Arizona.[3]  After dropping C.E. off with Grandparents, Mother returned to her home in Texas.

¶4        Eventually, Mother stopped communicating with C.E.'s Grandparents and after approximately six weeks, Grandparents realized Mother did not intend to return for C.E.  Grandparents sought a temporary guardianship in September 2014 and filed a private dependency petition in March 2015, when the guardianship expired.  The Department of Child

---

[1]        Father's parental rights were severed in October 2016, and he is not a party to this appeal.

[2]        According to the record, authorities investigated Father in connection with the alleged sexual assault of C.E.

[3]        Mother asserted at trial she informed Grandparents that she wanted C.E. to be with them in Arizona to keep her safe from Father, but Grandmother testified and the superior court found that Mother had not so advised Grandparents.

Safety ("DCS") substituted as petitioner and filed an amended dependency petition alleging C.E. was dependent because Mother neglected her and was unable or unwilling to parent her. A month later C.E. was found dependent as to Mother.

¶5        Following Grandparents' filing of the dependency petition, Mother planned for Grandparents to adopt C.E. Mother engaged in supervised phone and Skype calls and approximately three in-person meetings with C.E., but she was unable to support C.E. financially. In early 2016, Mother moved to Pennsylvania for about a month and began dating a man who lived in Indiana; Mother later moved to Indiana to live with him and his children.

¶6        In August 2016, DCS asked the superior court to change the case plan from reunification to severance and adoption. Although Mother had not previously objected to Grandparents' possible adoption of C.E., she objected, but the court granted DCS's request. DCS then moved to sever Mother's parental rights on the grounds of abandonment and fifteen months in an out-of-home placement pursuant to court order. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (8)(c).

¶7        After a two-day severance hearing, the superior court severed Mother's parental rights on the grounds of abandonment and fifteen months in care. As to abandonment, the court found Mother walked away from her parental role with C.E. in June 2014. It found Mother supported adoption by Grandparents from the filing of the dependency petition in March 2015 to August 2016, and that Mother's sporadic appearances and lack of parenting were consistent with her decision to leave C.E. in Grandparents' care and to have her rights severed. The court further noted Mother did not have a stable home, did not understand the trauma C.E. had suffered due to Father's abuse, and never asked C.E.'s healthcare providers to help her understand that trauma. It concluded that "[w]hatever Mother's reason for minimizing her contact with [C.E.], abandonment occurred nonetheless."

¶8        As to the fifteen-months-in-care ground, the superior court repeated its finding that before August 2016 Mother intended for Grandparents to adopt C.E. It found that during these months, there was "no true parenting during her short visits to Arizona or the phone calls" and "no attempt to participate in the recommended services." It further found Mother's lack of a stable and safe home throughout the dependency, cross-country move, and failure to find a job and housing were evidence of her instability, and that it was premature to find Mother's circumstance in

Indiana would remedy her parenting issues. The superior court concluded Mother had not "remedied her understanding of [C.E.]'s challenges nor done anything of substance to remain in her life as a parent" and there was a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control in the near future.

¶9 The superior court concluded severance was in C.E.'s best interest because C.E. had lived with Grandparents since July 2014, was medically and developmentally on track, had received the support and therapy she needed to overcome the trauma she experienced in Texas, and would continue to grow in a healthy environment under Grandparents' care. Furthermore, it found Grandparents would adopt C.E.

¶10 Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A) and 12-2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶11 Mother argues the superior court erred by severing her parental rights because insufficient evidence supported the court's finding of abandonment.[4]

¶12 The superior court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted). Accordingly, we will not reweigh the evidence, and we will affirm a severance order that is supported by reasonable evidence. *Id.* (citations omitted).

¶13 A parent's rights in the care, custody, and management of her children are fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). A court may sever those rights if it finds: (1) clear and convincing evidence of one of the statutory grounds for severance in A.R.S. § 8-533(B), and (2) by a preponderance of the evidence that severance is in

---

[4] If clear and convincing evidence supports either of the statutory grounds on which the superior court ordered severance, we need not address the appellant's arguments pertaining to the other ground. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002). We therefore do not address Mother's claims regarding the court's fifteen-months-in-care finding.

the child's best interest.  A.R.S. § 8-533(B); *Kent K.*, 210 Ariz. at 281-82, 288, ¶¶ 7, 41.

¶14     The superior court may sever the parent-child relationship pursuant to A.R.S. § 8-533(B)(1) if "[t]he parent has abandoned the child." Abandonment is "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision," and "includes a judicial finding that the parent has made only minimal efforts to support and communicate with the child."  A.R.S. § 8-531(1).

¶15     Abandonment is measured by a parent's conduct rather than the parent's intent, and "[w]hat constitutes reasonable support, regular contact, and normal supervision varies from case to case." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶¶ 18, 20 (2000) (citation omitted). When circumstances prevent a parent from exercising traditional methods of bonding with a child, the parent "must act persistently to establish the relationship however possible and must vigorously assert [his or her] legal rights to the extent necessary." *Pima Cty. Juv. Action No. S-114487*, 179 Ariz. 86, 98 (1994).

¶16     We find no abuse of discretion.  The record amply supports the superior court's finding that Mother "walked away from her parental role" with C.E. in June 2014 and that "Mother's sporadic appearances and lack of parenting [were] consistent with her decision to leave [C.E.] in the care of [Grandparents] and to have her rights severed."

¶17     At the time of the severance hearing, C.E. had lived with Grandparents for over two years, and Mother admitted she had not been alone with C.E. even once during that time.  Mother, the DCS case manager, and Grandmother testified Mother wanted Grandparents to adopt C.E. until approximately four months before the severance trial.  The DCS case manager testified Mother visited C.E. only four or five times over two years, and only when she was in Arizona for court appearances.  Grandmother stated that when Mother did visit, she generally did not spend the entire day with C.E. but instead would spend the time on her phone with others or would leave the house, leaving C.E. behind.  Mother called C.E. via Skype only two or three times despite Grandparents' willingness to facilitate further calls.  Grandmother and the DCS case manager also testified Mother went four to six weeks without speaking with C.E. via telephone, and the DCS case manager denied that Mother had regularly sent gifts, cards, or letters to C.E. even though she of course knew

Grandparents' address. Grandmother testified Mother had not provided any financial support for C.E. at any time over the past two years.

**¶18**        Additionally, the DCS case manager stated Mother had not maintained a normal parental relationship with C.E., inquired about C.E.'s emotional needs, or attended any of the monthly Child and Family Team Meetings in the past six months and accordingly, she had "no idea of [C.E.]'s condition."    The record demonstrates Mother did not "act persistently to establish the relationship however possible" or "vigorously assert [her] legal rights to the extent necessary." *No. S-114487*, 179 Ariz. at 98.    For these reasons, reasonable evidence supports the superior court's order severing Mother's parental rights.

## CONCLUSION

**¶19**        We affirm the superior court's order.



AMY M. WOOD • Clerk of the Court
FILED:  AA