NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MONGCO T., JACK V., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.V., *Appellees.*

No. 1 CA-JV 17-0373
FILED 1-25-2018

Appeal from the Superior Court in Yavapai County
No. V1300JD201680011
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Mongco T., Sedona
*Appellant*

Law Office of Robert D. Rosanelli, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Jack V.*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Patricia A. Orozco[1] joined.

---

**C R U Z**, Judge:

¶1        Mongco T. ("Mother") and Jack V. ("Father") appeal the superior court's order terminating their parental rights to their child, J.V.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and Father are the unwed biological parents to J.V., born on July 26, 2010.

¶3        Between November 2015 and April 2016, Mother took J.V. to the Yavapai County Community Health Services Center no less than four times, complaining that J.V. was wheezing or coughing.  J.V.'s cough persisted on and off for several months, and it was noted that Mother was not giving J.V. her medication.  On February 29, 2016, it was further noted that Mother and J.V. were living out of their car.

¶4        On April 5, 2016, Mother brought J.V. to the Yavapai County Public Health Office for fever, cough, congestion, suspected asthma exacerbation, and bilateral conjunctivitis.  The treating physician spoke with the Department of Child Safety ("DCS"), with concerns that previous medications for J.V. were never picked up, Mother and J.V. were living out of Mother's car, food insecurity, weight loss, and J.V. would need further emergency health evaluations.  The physician worried that a short emergency room admission would not address the fear that J.V. could get septic or rapidly sick and suffer harm.

¶5        As the physician made arrangements to transfer J.V. to Flagstaff Medical Center, Mother became upset and fled the Yavapai Center with J.V.  Police were called to search for Mother and J.V., finding Mother, who was arrested.  J.V. was found at a commercial storage facility, where

---

[1]        The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

Mother was renting a unit, with a caregiver. Father's location was unknown at the time.

**¶6** On April 10, Father contacted DCS. Father explained that he is J.V.'s father, but did not sign her birth certificate as he and Mother were not together at the time J.V. was born. Father stated that he last saw J.V. a week ago, was aware Mother took J.V. to the doctor, but did nothing to follow up, and frequently was unaware of J.V.'s circumstances.

**¶7** DCS petitioned for dependency on April 11, 2016, alleging J.V. was dependent as to Mother and Father due to abuse or neglect. DCS alleged Father knew or should have known of Mother's neglect and took no steps to protect J.V. Father denied the allegations, claiming J.V. and Mother lived with him but that Mother likes to live out of her car at night. J.V. was placed in foster care. When she was first placed in foster care, the foster placement reported J.V. would not talk.

**¶8** On April 28, Father filed a motion to return J.V. to his home, claiming Mother had agreed to move out, that he was willing to comply with any restrictions on Mother's contact with J.V., and was willing to comply with the advice of any medical professionals for J.V.'s medical care. Because concerns remained that Father failed to understand how Mother's actions were harmful to J.V. and his ability to protect J.V. from Mother, the court found that returning the child to Father would create a substantial risk to J.V. and out-of-home placement continued to be in J.V.'s best interests. The court stated that if Father was able to protect J.V. and meet all her needs, it would look to place J.V. back with him. At the time, Mother was involved in criminal proceedings resulting from her arrest.

**¶9** To facilitate reunification, DCS provided Father and Mother supervised visits, parenting classes, behavioral intake and counseling, and psychological evaluations. Mother experienced difficulty with her supervised visits, calling the police on DCS on one occasion and obsessing over food on another, raising concerns that she might tamper with J.V.'s food and put her at risk. Father, however, established a working relationship with the parent aide, and he was allowed supervised visits with J.V. in the community, outside of the DCS office, although his progress was negated by the fact he was not observed to be firm in protecting J.V. from Mother. It was noted that J.V.'s speaking had improved as of May 2016 and there were no developmental concerns.

**¶10** J.V.'s dependency trial was held on July 25, 2016. After taking the matter under advisement, the court found J.V. dependent.

¶11        On July 27, 2016, Mother completed a psychological evaluation with Dr. G. Joseph Bluth.  Mother stated that she feels she did nothing wrong, was scared of DCS, and concerned about DCS kidnapping J.V.  Mother claimed to live with Father, and described their relationship as perfect.  Dr. Bluth found evidence of both depression and anxiety, which would affect her ability to provide J.V. with a safe and effective home, as well as have warm and empathic responses.  He found Mother's prognosis guarded, stating that she did not seem to have much, if any, insight into why DCS became involved, and that there was a large discrepancy between what she told him and what DCS reported.  From his perspective, it was unclear whether Mother would be able to discharge her parental responsibilities, particularly in light of information that there existed another case involving her three other children, who resided with their father.  Given Mother's condition, Dr. Bluth opined there would appear to be a risk of neglect given DCS's reports, although Mother denied she did anything wrong.   Dr. Bluth recommended Mother attend individual counseling, a psychiatric evaluation, parenting skills training, and couples counseling, given Mother reported to be living with Father at the time in contradiction to Father's statements that Mother was not living with him.

¶12        Due to Mother's continued erratic behavior, DCS referred Mother to Spectrum Healthcare for a mental-health assessment.  Mother stated she was "not in a mental health situation," and was only there because DCS ordered it.  She was diagnosed with an unspecified mental disorder.  In August 2016, J.V.'s foster parents emailed DCS their concerns that Mother's continued interactions with J.V. were having a negative effect on J.V. The foster parents noted that with increased visitation with Mother, J.V. was becoming more defiant and reverted back to speaking with grunts and noises, no longer took good care of herself or her possessions, and that her school work was suffering.

¶13        Dr. Bluth also evaluated Father, and found that he could possibly parent in the future so long as he could demonstrate the ability to provide J.V. a safe home and follow through with her medical care, although, as with Mother, Dr. Bluth noted a large discrepancy between what he was telling him and what DCS reported.  By October 2016, Father progressed to unsupervised visits.

¶14        On January 22, 2017, Father had his first overnight unsupervised visit.  Father was specifically directed that Mother was not to be present.  The next morning, Father texted the DCS case manager stating J.V. needed to go to a doctor, as her eye was itchy and was looking swollen. Father believed it was just allergies, although the doctor stated she had not

seen it this swollen before. On January 24, while at her foster home, J.V. disclosed that Mother was present during Father's unsupervised visit, that Mother struck J.V. during the visit, and that Father did nothing to stop Mother. J.V. later stated she felt scared while with Mother, and sometimes while with Father. Both Father and Mother denied that Mother was present during the January 22 visit. At a supervised visit in February, DCS reported that Mother appeared to be totally dominant.

¶15       In March 2017, the court changed J.V.'s case plan to severance and adoption. DCS moved to terminate Father's and Mother's parental rights on the grounds of willful abuse and nine months out-of-home placement, and Mother's parental rights on the grounds of mental illness, and that termination would be in J.V.'s best interests. Father and Mother continued to deny they had done anything wrong. J.V.'s guardian *ad litem* agreed that termination was in J.V.'s best interests.

¶16       A severance hearing was held on June 12, 2017, and continued on July 10, 2017. After taking the matter under advisement, the court terminated Father's and Mother's parental rights on July 31, 2017. As to both parents, the court found DCS had proven by clear and convincing evidence that they had willfully abused J.V. or failed to protect her from abuse, and that J.V. had been in an out-of-home placement for a cumulative period of nine months or longer. As to Mother, the court additionally found DCS proved by clear and convincing evidence that Mother was unable to discharge her parental responsibilities due to mental illness and there was reasonable ground to believe the condition would continue.

¶17       Mother and Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235, 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶18       We review the superior court's order severing a parent's rights for an abuse of discretion. *Frank R. v. Mother Goose Adoptions*, 239 Ariz. 184, 190, ¶ 21 (App. 2016). We view the facts in the light most favorable to affirming the superior court's findings. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).

¶19       A parent's rights in the care, custody, and management of their child are fundamental, but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). A court may sever those rights if it: (1) finds clear and convincing evidence of one of the statutory grounds for severance in A.R.S. § 8-533(B); and (2) finds by a preponderance of the evidence that severance

is in the child's best interests.  A.R.S. § 8-533(B); *Kent K.*, 210 Ariz. at 281, 288, ¶¶ 7, 41.

I.    Mother's Parental Rights

**¶20**        Father and Mother challenge the court's order terminating their parental rights on the nine months out-of-home placement and willful abuse grounds; however, Mother fails to challenge the court's order terminating her parental rights on the mental illness ground.

**¶21**        So long as sufficient evidence supports any one of the statutory grounds upon which the court orders termination of parental rights, we need not address claims pertaining to other grounds. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).  Mother has not challenged the finding that she would be unable to parent due to mental illness and that there was reasonable ground to believe the condition would continue.[2]  We therefore accept that finding and do not address it further. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017) (holding that parent's failure to challenge time-in-care finding constituted abandonment and waived "any contention that the court erred in granting severance on that basis.").

**¶22**        In addition to finding a statutory ground, the court must find that DCS has proven by a preponderance of the evidence that severance is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22.  In doing so, the court must include a finding as to how the child would benefit from a severance or be harmed by continuation of the parent-child relationship.

---

[2]    The superior court supported its finding, stating:

> Mother was evaluated by G. Joseph Bluth, Ph.D., on July 27, 2016 . . . .  Dr. Bluth opined that Mother's symptoms of depression and anxiety affect her ability to provide [J.V.] with a safe and effective home and affects her ability to have warm and empathic responses to [J.V.].  Mother has never acknowledged the reason that [J.V.] was removed from her care by DCS and seems unwilling or unable to gain any insight into why the Department is involved. Dr. Bluth stated that if Mother were able to gain insight, she may be able to remedy the need for DCS's concern.  Instead, Mother has claimed that employees of the Department falsified records including the records regarding the medical issues and reason for [J.V] being removed from her parents' custody.

*Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). DCS need not show it has a specific adoption plan for the child, but only that the child is adoptable or would benefit from the stability that an adoption would provide. *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). The court may consider the existence of a bond between the parent and child, but this factor is not dispositive. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

**¶23**        While Mother argues that termination is not in J.V.'s best interests, and that J.V. is actually suffering harm in DCS's control, sufficient evidence supports the court's finding that severance would be in J.V.'s best interests. The court found that termination would provide J.V. with a permanent, safe, and stable home, free from abuse, and that she was adoptable and in an adoptive placement that was able to meet her needs. We hold the court did not abuse its discretion when it severed Mother's parental rights to J.V.

II.        Father's Parental Rights

**¶24**        Father challenges the court's order terminating his parental rights on the nine months out-of-home placement and willful abuse grounds. Because we need only find one statutory ground, *see Jesus M.*, 203 Ariz. at 280, ¶ 3, we consider whether reasonable evidence supports the court's order terminating Father's parental rights on the willful abuse ground.

**¶25**        Section 8-533(B)(2) provides that evidence sufficient to terminate the parent-child relationship includes evidence that the parent has neglected or willfully abused the child; abuse which includes serious physical or emotional injury in which the parent knew or reasonably should have known that another person was abusing or neglecting the child. A.R.S. § 8-533(B)(2).

**¶26**        Here, the superior court was provided with sufficient evidence that Mother had willfully abused J.V. and that Father failed to protect J.V. from Mother's abuse as well as that Father himself neglected J.V.

**¶27**        Leading to the dependency petition, Father was aware that J.V. was sick, but failed to follow up on her medical treatment or check in. Further, while Father stated that J.V. and Mother lived with him, he also stated that he infrequently knew where J.V. was while she was with Mother, resulting in months of medical visits and concerns that J.V. was not receiving proper nutrition.

**¶28** Father was aware that Mother posed a danger to J.V. and that he was required to provide a safe home for J.V. During his unsupervised visit on January 22, Mother was present and struck J.V., causing her eye to swell. J.V. stated that Father did nothing to stop Mother. Father was aware of the allegations against Mother, and knew or reasonably should have known that Mother not only posed a risk of harm to J.V., but that Mother was in fact harming J.V. Reasonable evidence supports the superior court's order terminating Father's parental rights on the willful abuse ground.

**¶29** Father does not challenge termination on the grounds that termination was in J.V.'s best interests, and we therefore accept the court's finding. *See Michael J.*, 196 Ariz. at 249, ¶ 13.

**CONCLUSION**

**¶30** For the foregoing reasons, we affirm the superior court's order terminating Father's and Mother's parental rights to J.V.



AMY M. WOOD • Clerk of the Court
FILED:  AA