NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CASHA C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, U.C., J.C., R.C., *Appellees.*

No. 1 CA-JV 18-0431
FILED 4-11-2019

Appeal from the Superior Court in Maricopa County
No.  JD531061
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge James P. Beene joined.

---

**C A T T A N I**, Judge:

¶1            Casha C. ("Mother") appeals the superior court's order terminating her parental rights.  For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            Mother is a biological parent of U.C., born in January 2013, J.C., born in January 2014, and R.C., born in November 2016.[1]

¶3            In early July 2017, a babysitter asked Mother about minor injuries on the head or neck of each of the children.  Mother blamed the younger children's father and claimed she reported the issue to the Department of Child Safety ("DCS"), assuring the babysitter that "the suspect had been arrested."

¶4            Later that month, the babysitter discovered marks and bruises along U.C.'s and J.C.'s legs and backs, and she reported the injuries to DCS and to the police.  The children were examined by a child abuse pediatrician, who noted bruising and other skin injuries in various stages of healing.  Mother at first claimed the children had been injured several weeks earlier when visiting the younger children's father.  She later admitted that she had hit U.C. and J.C.—then 4 and 3 years old, respectively—with her closed fist and with a belt to punish them a few days earlier.  She described being seriously intoxicated (an 8 on a scale of 1 (sober) to 10 (blacking out)) at the time, and she further admitted drinking to the point of blacking out almost nightly for the preceding year.

¶5            Mother was arrested at the scene and charged with felony child abuse, and DCS took the children into care.  Mother later pleaded guilty to one count of child abuse as a class 6 undesignated felony.  In December 2017, the court imposed 5 years' supervised probation with

---

[1]      The children's fathers were also subject to the dependency and severance proceedings, but they are not parties to this appeal.

domestic violence terms, restrictions against consuming alcohol, and restrictions on contact with the victims.

¶6 Meanwhile, the juvenile court found the children dependent as to Mother. In addition to the services provided through Mother's probation, DCS directed Mother to participate in an array of family reunification services, including a psychological evaluation, individual counseling, substance-abuse testing, and community-based parenting classes. Despite this directive, from August to December 2017, Mother completed no services other than a single urinalysis drug test, which was negative for all substances.

¶7 In early December 2017, Mother completed a psychological evaluation. The evaluator noted that Mother minimized both her alcohol use and the child abuse, and lacked insight into the link between them. Ultimately, the evaluator recommended that Mother show at least 9 to 12 months of proven sobriety, successfully complete a 9- to 12-month substance-abuse program targeting alcohol use, complete parenting classes and a domestic-violence program addressing non-violent discipline, and participate in individual therapy addressing (among other things) both her alcohol use and parenting responsibilities. DCS incorporated these recommendations as reunification services.

¶8 Over the next nine months, Mother missed over one-third (approximately 18 out of 51) of her scheduled drug and alcohol tests, but the rest were negative. Mother's acknowledgement of her alcohol problems vacillated throughout the proceedings. In July 2017, she admitted to police that she had been drinking to the point of blacking out six or seven days per week for the preceding year, but her presentence report noted that she claimed not to drink regularly and generally minimized her alcohol use. Similarly, Mother told the psychological evaluator that she only drank socially, and she denied ever blacking out due to alcohol (or drugs). Consistent with such minimizing comments, one in-person substance-abuse treatment provider declined to recommend services based on Mother's self-disclosure.

¶9 In mid-February 2018, Mother completed an intake with a different provider for parenting skills groups, domestic-violence group counseling, and substance-abuse group counseling. Over the next several months, she successfully completed 32 hours in a group addressing basic parenting skills; her parenting group facilitator reported that Mother was attentive, but not engaged at the same level as other parents in the group. By September 2018 (and despite some earlier attendance issues), Mother

had completed around 22 of 26 scheduled sessions of domestic-violence group counseling, although that program did not address physical discipline of children. Mother provided no record of participation in any substance-abuse counseling. She did, however, complete a 16-hour online drug and alcohol awareness class.

**¶10** Mother initially reported to DCS that she independently sought individual counseling, but the provider reported otherwise. After the December 2017 psychological evaluation (which recommended individual therapy in conjunction with other domestic-violence and substance-abuse service), DCS referred Mother for individual counseling, and she began participating regularly in March 2018.

**¶11** Around that time, DCS moved to terminate Mother's parental rights on the statutory grounds of willful child abuse and nature of felony conviction. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (4). After a contested termination adjudication hearing in September 2018, the superior court terminated Mother's parental rights as to all three children, finding that severance was warranted on both of the grounds alleged and that severance would be in the children's best interests.

**¶12** Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

**¶13** The superior court may terminate the parent–child relationship if clear and convincing evidence establishes at least one statutory ground for severance, and a preponderance of the evidence shows severance to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We review the superior court's severance ruling for an abuse of discretion, deferring to the court's credibility determinations and factual findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶14** Mother argues that the superior court erred by finding statutory grounds supporting termination of her parental rights; she does not challenge the court's best interests determination. One statutory ground on which the court relied in this case was the nature of Mother's felony conviction: "the parent is deprived of civil liberties due to the conviction of a felony if the felony of which that parent was convicted is of such nature as to prove the unfitness of that parent to have future custody and control of the child." A.R.S. § 8-533(B)(4). Under this ground, the

superior court must "assess the parent's future fitness on the basis of a past act," considering whether the nature of the felony committed "permits a rational inference of [parental] unfitness." *In re Juv. No. J-2255*, 126 Ariz. 144, 146–47 (App. 1980); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 252, ¶ 32 (2000); *In re Pima Cty. Juv. Action Nos. S-826 & J-59015*, 132 Ariz. 33, 34–35 (App. 1982). A parent may rebut this inference of unfitness "by showing actual fitness at the time of the hearing." *J-2255*, 126 Ariz. at 147.

¶15        Mother does not dispute that she is deprived of civil liberties due to her conviction of child abuse, and she does not challenge the superior court's finding that the nature of that offense proves parental unfitness. Instead, Mother argues that the court wrongfully failed to consider evidence that rebutted the inference of unfitness. She asserts that the offense was alcohol related, and that she rebutted the inference of unfitness by (1) consistently testing negative for drugs and alcohol, (2) participating in domestic-violence counseling, parenting skills training, and substance-abuse counseling, and (3) showing growth and improvement as reflected in her individual therapy records.

¶16        But the record supports the superior court's contrary assessment. Despite testing negative for drugs and alcohol on the tests she completed, Mother missed over one-third of the tests required. While Mother completed a parenting group (albeit with an assessment that she had not engaged as fully as other participants), she had not yet completed domestic-violence counseling over a year after the dependency began. And although she was potentially within a few weeks of completing the domestic-violence program, her counselor acknowledged that the program was not targeted at physical discipline and child abuse. Moreover, although Mother may have requested substance-abuse counseling from the same provider, there was no evidence that she participated in or completed any substantive program to address alcohol abuse other than an online drug and alcohol awareness class.

¶17        In sum, Mother offered evidence showing her efforts to assuage parenting concerns related to her child abuse conviction. But other evidence supported the superior court's assessment that she had not rebutted the inference of parental unfitness stemming from that conviction, and we will not reweigh the evidence on appeal. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. Because we affirm the severance ruling on this ground (nature of felony conviction), we need not address the second statutory ground (willful abuse) found by the superior court. *Id.* at ¶ 3.

**CONCLUSION**

¶18        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA