NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

OCTAVIO G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.S-G, J.S-G, J.G,
*Appellees*.

No. 1 CA-JV 19-0259
FILED 2-11-2020

Appeal from the Superior Court in Maricopa County
No. JD17456
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Mesa
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Diane M. Johnsen joined.

---

**T H U M M A**, Judge:

¶1         Octavio G. (Father) challenges the superior court's termination of his parental rights to his three biological children based on 15-months time-in-care. Finding no error, this court affirms.

**FACTS AND PROCEDURAL HISTORY**

¶2         A prior dependency proceeding involving the older two children lasted from January 2015 to June 2016. When that matter was dismissed, Father was granted custody and sole legal decision-making, with Mother having supervised visitation.

¶3         In February 2017, the youngest child was born substance-exposed to marijuana. Early one morning in April 2017, police found Mother and the three children sleeping on the ground outside. The infant was wearing only a diaper and the other children used napkins to stay warm. The police arrested Mother, who said she and the children had "been staying at her father's house for the past week and had been kicked out." The Department of Child Safety (DCS) took the children into care because it could not reach Father and no one else could care for them.

¶4         This second dependency petition, filed in April 2017, alleged Father neglected the children "by failing to provide them with the basic necessities of life." The court found the children dependent as to Father in July 2017, adopting a case plan of family reunification, concurrent with severance and adoption for two of the children.

¶5         DCS provided Father various services. Although Father successfully completed substance abuse testing, he was unsuccessfully closed out of parent aide services. Given the passage of time and a lack of progress, the court changed the case plan to severance and adoption in October 2018, and DCS moved to terminate based on 15-months time-in-care.

¶6        At the two-day adjudication in July 2019, Father and two DCS child safety specialists testified. After taking the matter under advisement, the court found DCS had met its burden of proof and that termination was in the best interests of the children:

> [Father] is the same person today that he was when he allowed the Children to stay with Mother. . . . Time in care cases can often seem like the Department is seeking termination merely because a parent has not jumped through required hoops. This is not this case. . . . Nothing Father has done in the time since [the Children were taken into care] would prevent that or something similar from happening again if the Children were returned to Father.

¶7        This court has jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes (A.R.S.) §§ 8-235(A) and 12-120.21(A)(1) (2020) and Arizona Rules of Procedure for the Juvenile Court 103 and 104.[1]

## DISCUSSION

¶8        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

¶9        The 15-months time-in-care ground requires proof by clear and convincing evidence that DCS "has made a diligent effort to provide appropriate reunification services" and that:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

> or longer pursuant to court order or voluntary placement pursuant to [A.R.S.] § 8-806, the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c); *Michael J.*, 196 Ariz. at 249 ¶ 12. Father does not challenge the adequacy of the services provided, nor does he dispute that the children have been in care for 15 months or the best interests finding, all of which the record supports. Instead, Father argues the court erred when it found the evidence demonstrated he had not remedied the circumstances that caused the removal of the children.

**¶10**        Father's arguments on appeal seek to reweigh the evidence, something this court will not do. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002). This is particularly true where, as here, the superior court found Father's testimony was not credible.

**¶11**        In addressing how this second dependency came to be, Father argues that he "had [no] way of knowing beforehand that Mother would leave the grandfather's home with the children during the authorized visit." At trial, he testified that the children had been with Mother for only eight hours before police found them sleeping on the ground that morning. The superior court, however, did not believe Father, given that police found Mother and the children at 5:37 a.m. The court also noted Father had not notified DCS that Mother had custody of the children, had not reported the children missing, and could not be located for several days to take custody of the children. This evidence supported the court's finding that Father had entrusted the children with Mother for far longer than the eight hours he claimed.

**¶12**        Father argues he satisfied DCS' requirements for reunification by enhancing his protective role and his ability to recognize threats to the children's well-being. However, the evidence supports the court's findings that Father was referred for several services, but ultimately "[n]othing Father has done in the time since" this second dependency began would prevent the concerns that brought the children back in care. Other than substance abuse testing, Father did not successfully complete any of the services DCS provided.

4

**¶13** Father argues that DCS kept "changing the finish line" once he completed "the objectives requested." He contends he improved his parenting abilities and points out that the psychiatric evaluator recommended a family reunification team. At trial, however, a DCS child safety specialist testified that a family reunification team "is a progression where typically a parent is successful from a parent aide service and then they would go into a family reunification team service." Father, however, never successfully completed any parent aide service, a predicate for a family reunification team. The record does not reflect that Father completed "the objectives requested," let alone that any relevant "finish line" kept changing.

**¶14** The record reflects that the superior court properly considered the evidence before it granted the motion to terminate. In doing so, the court found that Father's parenting abilities had not changed since he allowed the children to stay with Mother in April 2017. On this record, Father has not shown the court erred in granting DCS' motion.

## CONCLUSION

**¶15** The superior court's order terminating Father's parental rights to the three children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA